TEXAS CENT. R. CO. v. NEILL et al.

(Court of Civil Appeals of Texas. Ft. Worth. June 21, 1913. Rehearing Denied Oct. 18, 1913.)

1. MASTER AND SERVANT (§ 205*)—MASTER'S DUTY.

An employé may assume on entering the employment that his employer has performed every duty which the law or the contract of employment imposes, in the absence of contrary knowledge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. § 205.*]

2. MASTER AND SERVANT (§§ 101, 102, 205*)—MASTER'S DUTY—INSTRUMENTALITIES OF WORK.

An employer is only required to exercise ordinary care to furnish safe appliances, instrumentalities, etc., of work, and is not under an absolute duty to do so, and hence the employé may only assume that his employer will use reasonable care to discharge such duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192, 547–549; Dec. Dig. §§ 101, 102, 205.*]

3. MASTER AND SERVANT (§ 293*)—INJURIES—INSTRUCTIONS.

The court instructed, in an action for a railroad engineer's death by derailment after a heavy rain, that if the company's rules required section foremen to inspect the roadbed, culverts, etc., after storms, and during rains, if continuous, for the purpose of locating unsafe places and warning trains thereof, and if decedent knew of such rules, then he could rely upon such inspection being made, and notice being given to him of any washouts, and if he was not warned and received no notice of the washout in question, he could assume that the track was safe. Held, that the instruction was erroneous as charging that the company owed decedent the absolute duty to inspect the track, etc., and notify decedent of the defect resulting in the derailment, regardless of the time intervening between the rain and the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

4. TRIAL (§ 251*)—INSTRUCTIONS—APPLICABILITY TO ISSUES.

An instruction, in an action for a railroad engineer's death by derailment because of a washout at a culvert, that decedent could rely on the inspection of the roadbed after a heavy rain pursuant to the company's rules, and could assume that the track was in a safe condition if not warned to the contrary after inspection, was erroneous as prejudicing the defense of contributory negligence, where the petition admitted that decedent discovered the dangerous condition and remained on the engine for the sake of the passengers.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

5. MASTER AND SERVANT (§ 286*)—INJURIES—JURY QUESTION—NEGLIGENCE.

Evidence, in an action for the death of a railroad engineer by derailment after a washout, held to make it a jury question whether the company, in the exercise of ordinary care, should have inspected the tracks and notified decedent of the defect before the accident occurred.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

6. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—CONFLICTING INSTRUCTIONS.

A case should be reversed where the different parts of a charge are contradictory upon a material issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

7. MASTER AND SERVANT (§ 124*)—MASTER'S DUTY—INSPECTION.

The employer's duty to furnish reasonably safe tools and place of work implies a further duty of seasonably inspecting them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235–242; Dec. Dig. § 124.*]

8. RELEASE (§ 17*)—VALIDITY—FALSE REPRESENTATIONS.

If representations made to secure a release for liability because of personal injuries were in fact false, the fact that the person making them believed them to be true would not prevent the injured person from having the release set aside.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 32; Dec. Dig. § 17.*]

9. APPEAL AND ERROR (§ 758*)—BRIEF—OBJECTION TO EVIDENCE.

Error cannot be claimed in sustaining an objection to questions to a witness, where appellant's brief does not show what objections were sustained, or what the proposed evidence was, or whether it would have been admissible.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3093; Dec. Dig. § 758.*]

Appeal from District Court, Shackelford County; Thomas L. Blanton, Judge.

Action by Charles T. Neill continued on his death by his widow and minor children, against the Texas Central Railroad Company.

From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

W. T. Andrews, of Stamford, Spell & Sanford, of Waco, and Alexander S. Coke, of Dallas, for appellant. W. L. Morris, of Albany, and W. L. Eason and Hamilton & Kibler, all of Waco, for appellees.

SPEER, J. This suit was originally filed by Chas. T. Neill to recover damages for personal injuries received by him through the alleged negligence of the defendant Texas Central Railway Company. Neill subsequently died and his surviving widow and minor children were substituted as plaintiffs. There was a verdict and judgment for the plaintiffs, and the defendant has appealed.

The deceased was a passenger engineer on one of the trains of appellant, and received the injuries from which death is alleged to have resulted through the derailment and overturning of his engine at a small creek or water course on the defendant's line. Briefly stated, the issues were: (1) Negligence of the company in failing to construct a sufficient culvert for the drainage of the stream in the first place; (2) negligence of the company in failing properly to inspect the roadbed and culvert, and to notify plaintiff after a heavy rain which had fallen the night before; (3) release and settlement by the deceased; (4) assumed risk; (5) contributory negligence; (6) and that the accident was the result of the act of God.

Many of appellant's assignments need only to be considered in a general way, since the case is to be reversed, and many of the questions complained of will hardly arise on another trial.

Upon the trial the following instruction was read: "If you believe from the evidence that at the time of, or prior to, the accident in question the defendant had promulgated and there was then in force certain of its rules and regulations requiring all section foremen on their respective sections to make an inspection of the defendant's roadbed, bridges, and culverts after rains or storms, and during rains, if continuous, for the purpose of locating washouts and other unsafe places in such tracks, roadbed, bridges, and culverts, and if any were found, to place a flagman at same to warn trains thereof, and also to wire train dispatchers of defendant of such washouts or unsafe places, and that such train dispatchers were required to put out train orders to all engineers in charge of trains scheduled to pass such washouts and other unsafe places, advising them of the same, and if you further believe from the evidence that Chas. T. Neill knew of such rules and regulations at and prior to the accident in question, then and in such event you are instructed that the said Neill had the right to rely upon such inspection being made and notice given him of any washouts or other unsafe places in defendant's track, roadbed, bridges, and culverts, and in this connection you are further instructed that if you believe from the evidence no flagman was at washout to warn said Neill thereof, and that he received no notice by wire advising him of the same, then and in such event, you are instructed that the said Neill had the right to assume that the track, roadbed, bridges, and culverts were in a safe condition as to washouts and other unsafe places."

[1-3] It is, of course, true that the servant upon entering the employment of the master may assume that the latter has performed every duty which the law or the contract of employment imposes upon him, in the absence of knowledge to the contrary. The law does not make the master an insurer of the servant, and does not, therefore, impose upon him the absolute duty of furnishing safe tools, appliances, places, and the like, but at most requires of him only the exercise of ordinary care in these respects. Logically it follows, then, that the employé has the right to assume only that the employer will use reasonable care in discharging his duty, whether that duty appertains to furnishing safe instrumentalities in the first place, or to subsequent inspection and repairs to keep them so. We apprehend no one could be found who would insist that a charge was correct which instructed the jury that the appellant owed the deceased the absolute duty to inspect its culvert, regardless of the time intervening between the rain and the accident, and if found to be unsafe to notify deceased, yet this is exactly what the charge in the present case in effect does. If deceased had the right to assume that such inspection had been made, it was so because such was the bounden duty of appellant. Such we have seen is not the case, and the court erred in the instruction given, which necessarily had the effect to impose too great a burden on appellant.

[4, 5] The instruction is erroneous for another reason. Appellant interposed a plea of contributory negligence. Appellee's petition contained allegations, in effect, admitting that deceased discovered the dangerous condition of the track, but yet stayed on his engine for the sake of his passengers. That issue was submitted to the jury; the effect of the charge being criticised was to prejudice this defense. It was for the jury to say whether or not, in the exercise of ordinary care for his own safety, deceased might assume that an inspection had been made. The rain causing the washout had fallen about midnight. The section foreman whose duty it was to inspect the tracks usually went to work about 7 a. m. He lived in Albany a few miles away. The accident occurred about 7 a. m. In the very nature of the duty which appellant owed to appellee, a reasonable time must be allowed to it in which to inspect the tracks after a

rainfall. The deceased was chargeable with knowledge of this fact. The deceased could see that a heavy rain had fallen. It, therefore, became a question of fact whether, in the exercise of ordinary care, appellant company would have inspected its tracks and notified deceased of the washout in so short a time. See Louisville & N. R. Co. v. Banks, 104 Ala. 471, 31 South. 573.

[6] It is true in other portions of the charge the appellees were permitted to recover if appellant failed to exercise ordinary care in the matter of inspecting its tracks and reporting the washout. And further, in a special charge given at the request of appellant, the jury were told, in effect, that such failure to inspect must have been negligent before the plaintiffs could recover on that issue. This, however, in the view we take of the charge quoted, amounts at most only to a contradiction, and the rule is in such a case to reverse where the different parts of a charge are contradictory upon a material issue. So. Kansas Ry. Co. v. Sage, 98 Tex. 438, 84 S. W. 814.

[7] The general duty to exercise care to furnish reasonably safe tools and places postulates the duty seasonably to inspect them, for in no other way can that primary duty be performed, and this fact, perhaps, gives rise to the fugitive expressions so often found that the duty to inspect is absolute, yet in the very nature of things the frequency with which inspections are to be made to maintain the safety of such implements or place is peculiarly a question of ordinary care to be determined as one of fact by the jury. The effect of the instruction which we have condemned was to charge appellant, as matter of law, with negligence in not having inspected its track after the rain, which had fallen only a few hours before; in short, to require an inspection whether a reasonable time had elapsed or not. Such a requirement is unreasonable.

[8] The point is raised in several ways that the settlement and release of deceased for $1,500 was binding upon appellees, in the absence of fraud or bad faith on the part of appellant's agents, whose representations induced the settlement. It can make no difference that appellant's agents believed the representations to be true which they made to induce deceased to execute the release. If the same were in fact false, appellees were entitled to relief against them. M., K. & T. Ry. Co. v. Reno, 146 S. W. 207; G., C. & S. F. Ry. Co. v. Huyett, 49 Tex. Civ. App. 395, 108 S. W. 502.

The question of the applicability of the federal Employers' Liability Act could not be raised by special exception, as was sought to be done, since appellee's pleadings showed a case of liability under our state statute. St. L., S. & F. Ry. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. ——; K. C.,

M. & O. Ry. Co. v. Pope, 152 S. W. 185; s. c., 153 S. W. 163.

[9] Neither is any error made to appear in in the twenty-third assignment, complaining of the court's action in sustaining objections to interrogatories propounded to the witness Russell, "which interrogatories and answers would have elicited information in reference to the defendant being a carrier of interstate commerce," etc., since the brief fails to show what objections the court sustained, or what the proposed testimony was, and whether it would, in any event, have been admissible. But this and the matter last discussed may be more specially presented to the trial court on another trial. We have carefully examined all assignments, many of which we here take occasion to say are so general as not to present any question whatever for decision, but have concluded that no error other than the one discussed was committed.

Reversed and remanded.