## MISSOURI, K. & T. RY. CO. OF TEXAS v. MAPLES.

(Court of Civil Appeals of Texas. Dallas. Dec. 20, 1913. Rehearing Denied Jan. 10, 1914.)

1. APPEAL AND ERROR (§ 882*)—SUBMISSION OF ISSUES—INVITED ERROR.

Where, in a personal injury action, the court submits the issue of defendant's negligence in charges requested by defendant, and it does not appear that the charges were requested on condition that a peremptory charge be refused or requested after the court read its general charge, error, if any, in the fact of submission of the issue of negligence, being invited, could not be complained of by defendant on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

2. TRIAL (§ 139*)—REFUSAL OF PEREMPTORY INSTRUCTION—EVIDENCE.

Where, in a personal injury case, it could not be said in view of the entire evidence that there was no testimony sufficient to sustain a verdict for plaintiff, a peremptory instruction for defendant was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

3. APPEAL AND ERROR (§ 1002*)—SCOPE OF REVIEW—CONFLICTING TESTIMONY.

The solution of conflicting testimony rests exclusively with the jury and not with the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

4. RELEASE (§ 17*)—FRAUD—INJURY TO SERVANT.

Where an injured railroad employé was induced to sign a release, on the assurance of a physician in defendant's employ and attending to the employé's injuries, that the injuries were merely temporary, and that he would recover in two or three weeks, when, in fact, his injuries were permanent and serious, this amounted to fraud invalidating the release, though the physician and defendant's claim agent, who repeated the physician's statements, believed them to be true.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 32; Dec. Dig. § 17.*]

5. FRAUD (§ 1*)—DEFINITION.

Generally speaking, "fraud" is any act, omission, or concealment, which involves a breach of legal duty, trust, or confidence, justly reposed, and is injurious to another, or by which an undue and unconscientious advantage is taken of another.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 1–7; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 3, pp. 2943–2954; vol. 8, p. 7666.]

6. TRIAL (§ 191*)—INSTRUCTIONS—ASSUMPTION OF FACTS.

In an employé's action for injuries, an instruction is not objectionable, as assuming facts in dispute, merely because it presents plaintiff's theory of the case authorized by the facts and circumstances in evidence, and tells the jury that if they believe from a preponderance of evidence that the same constituted negligence as defined by the court, to find for plaintiff, unless they find for defendant under instructions presenting its theory of the accident.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

7. TRIAL (§ 252*)—INJURY TO SERVANT—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In a railroad employé's action for injuries from falling off a flat car on which he was working, failure to submit defendant's claim that plaintiff went upon the car voluntarily, and hence was guilty of contributory negligence was not error, where the undisputed evidence showed that plaintiff was employed by defendant's foreman for the specific duties in which he was engaged at the time of his injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

8. TRIAL (§ 244*)—INJURY TO SERVANT—INSTRUCTIONS—UNDUE EMPHASIS ON FACTS.

In an employé's action for injuries, an instruction which, in stating the converse of a proposition presented in a previous instruction, repeated the facts relied on by plaintiff to constitute defendant's negligence was not erroneous as unduly impressing the jury with plaintiff's side of the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

9. TRIAL (§ 252*)—INJURY TO SERVANT—INSTRUCTION—ASSUMPTION OF RISK.

In a railroad employé's action for injuries from falling off a flat car where he was engaged in handing down buckets of water for use in extinguishing a fire, an instruction that plaintiff assumed all the risk of being injured while discharging the duty ordinarily "incident to his employment" was not erroneous for failure to use the expression "incident to his duty as a section hand" in place of the words quoted, where it appeared that at the time of his injury plaintiff was not employed as a section hand, but was expressly employed to assist in extinguishing a fire.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

10. TRIAL (§ 256*)—INJURY TO SERVANT—INSTRUCTION—DUTY TO REQUEST.

Where the instruction on assumption of risk in a railroad employé's action for injuries properly presents assumption of ordinary risks, but does not take into consideration the fact that the particular risk was extrahazardous, though such is the fact, defendant should request a charge specifically covering the matter.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by O. F. Maples against the Missouri, Kansas & Texas Railway Company of Texas. From judgment for plaintiff, defendant appeals. Affirmed.

Alex. S. Coke, of Dallas, and Spell & Sanford, of Waco, for appellant. Collins & Cummings, of Hillsboro, C. L. Black, of Austin, and V. L. Shurtleff, of Hillsboro, for appellee.

RASBURY, J. Appellee recovered verdict and judgment for $5,500 against appellant for damages for personal injuries received while in the employ of appellant and as a result of its alleged negligence, and from which judgment this appeal is taken.

The complaint alleges that appellee was engaged by appellant, with other "section hands," to assist in extinguishing a fire which was burning cotton stored upon appellant's platform in the town of Abbott, and that in

doing so he got upon a "flat" car containing tanks of water, at the command of his foreman, in order to pass buckets of water to other employés of appellant upon the ground, who, in turn, emptied same upon portions of the fire; that about 2 a. m. he ceased work, and, while attempting to alight from the car upon which he was working, he lost his balance and jumped to the ground to avoid falling and received the injuries complained of, which resulted proximately from the failure of appellant to furnish appellee a light to work by, the time being night, and the place dark.

Appellant met the charge of negligence by the general denial and special pleas asserting that appellee was a volunteer in the work in which he was engaged, assumed risk, contributory negligence, and a settlement and release by appellee of all claims against appellant for his alleged injuries. Appellee met the answer of appellant by a general denial and special plea asserting the settlement and release was obtained by the fraud of appellant and its agents, and that the amount received by appellee, to wit, $39, was grossly inadequate to his injuries.

In reference to the facts it may be said that it is practically undisputed that appellee, with others, was set to work by appellant's section foreman in an attempt to extinguish or control a fire then burning cotton upon appellant's platform in Abbott, and in an effort to protect appellant's property and track, and that at the time when appellee received his injuries he was engaged in the discharge of such duties. Both appellant's foreman and the appellee testified that it was under the direction of the foreman that appellee went to work, and no witness denied it. From about 8 o'clock p. m. until about 2 a. m. appellee's duty was to carry water and pour same upon appellant's railway tracks to prevent them "kinking." About 2 o'clock p. m. some tanks of water arrived in Abbott from Hillsboro, upon flat cars which had been arranged for in anticipation of the exhaustion of the water supply at Abbott. Without detailing why it was done, the foreman finally had the cars containing the tanks of water placed as best he could, and formed his men in a line for the purpose of lifting the water from the tank and emptying it where it would do the most good. The car upon which appellee was injured contained three tanks of water. One of the employés named Oscar Taylor, at the direction of appellant's foreman, laid a plank between two of the water tanks, mounted the same, dipped water therefrom, and handed it to appellee, who stood on the floor of the car between two of the water tanks, and who, in turn, passed same to the next man, and so on until it was finally used for extinguishing the fire. Just before the accident, the other employés failing to return to the car for more water, and while appellee was holding a bucket of water in his hand awaiting their ar-

rival, appellee and Taylor commenced discussing a method of alighting from the car, if the other employés did not return. For the purpose of ascertaining whether the other men were returning, appellee attempted to "peep" around one of the water tanks which obstructed his view of the direction in which the men were, and while so doing he slipped, lost his balance, and, to prevent falling, jumped to the ground below, and received the injuries complained of. Appellee testified that it was quite dark at the place he was working, and the space on which he had to stand between the tanks of water was small, and that the duties he had to perform could not be safely performed without a light, and that, in recognition of that fact, appellant's foreman had furnished him a lantern by which to work, but had removed the same just prior to the accident to be used for another purpose, and that the accident would not have occurred had the light remained or another been furnished. Opposed to appellee's testimony was that of Volker, the foreman, Oscar Taylor, the employé working with appellee on the car, and Drew Kennedy, all of whom positively testified that not only was a light not furnished while appellee was working on the water cars, but that a light was not necessary for the reason that the fire furnished light sufficient for one to see plainly how to perform the duties being performed by appellee, as well as sufficient light for him to safely leave the car when he quit work. We omit the facts developed by appellee upon the question of the release and his claim that same was obtained by fraud and that the sum paid was grossly inadequate. Such evidence will be stated under the second assignment of error.

[1] Appellant's first assignment of error asserts that the court erred in refusing to instruct a peremptory verdict for it as requested, for the reason that the evidence discloses no negligence on its part. Appellee's answer to this claim is that if the submission of the issue of negligence at all was error it was invited, and that the evidence in truth did authorize its admission. We think both propositions are correct. The record on appeal discloses that the issue of negligence on the part of appellant, its agents and servants, was submitted to the jury by the court in three special charges read to the jury at the special request of appellant, and fails to disclose that the three charges submitting the issue of negligence vel non had been requested on condition that the peremptory charge was refused or had been requested after the court had read its general charge. Under such conditions, the rule is that if there was error in the manner complained of it was invited, and could not be complained of on appeal. Without anything in the record to indicate that the action of the appellant, in thus contributing to the alleged error of the court, was conditional upon the refusal of the court to grant a peremptory instruc-

tion, appellant is held to have invited it, and cannot complain. Poindexter v. Kirby Lumber Co., 101 Tex. 322, 107 S. W. 42; Henry v. McGown, 140 S. W. 1170; Railway Co. v. Rodrignez, 133 S. W. 690; Alamo Dressed Beef Co. v. Yeargan, 123 S. W. 721; Hill County Cotton Oil Co. v. Gathings, 154 S. W. 664; Alamo Oil & Ref. Co. v. Curvier, 136 S. W. 1132.

[2] We are also of opinion that the evidence was sufficient to sustain the verdict of the jury. Negligence being a question of fact to be ascertained by the jury, our duty is solely to ascertain if the case presented by the record is one of which it may be said that, "from the whole case as made by the testimony, the plaintiff had no testimony upon which the jury could reasonably have found a verdict." I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106. The record here, in our opinion, does not present such a case.

[3] It does appear that there was a sharp and irreconcilable conflict on the material issue in the suit between appellee and the witnesses Volker, Taylor, and Kennedy. The solution of such conflict is neither the privilege nor the duty of this court, however, but the exclusive right and province of the jury. Why the jury adopted the testimony of appellee and discarded that of the other witnesses is a question with which we are not permitted to concern ourselves. It has always been thought, and is no longer disputed, that those sworn to try the case and who hear the testimony and confront the witnesses are better qualified to determine the credibility and the weight to be given their testimony than are judges of appellate courts, and it is but observing settled rules when we decline to interfere with jury verdicts on the ground that the weight of the testimony is for a given side. There is a rule that permits our interference, but a discussion of same is unnecessary since this case is not within such exception.

Appellant's second assignment of error asserts the court below should have instructed a verdict for it, for the reason that, the execution of a release by appellee for all injuries received by him being undisputed, the testimony adduced on trial was insufficient to take the case to the jury on the issue that same was procured by the fraud of appellant, its officers or agents. Against this asserted error it is first urged that, if it was error to refuse the peremptory charge, it is not available here, because invited by appellant. The record supports this contention. In three special charges requested by appellant and by the court read to the jury, the issue of fraud vel non is submitted to the jury for their determination, without anything in the record showing that such charges were requested and allowed by the court on condition that the court refused the peremptory charge. In such cases the presumption is that all charges were requested simultaneously, and any error resulting from the giving of any of the requested charges is not available to the litigant that invites it. See authorities cited in disposing of the first assignment of error.

[4] It is next urged and we are also of opinion that the evidence was sufficient on the issue of fraud in procuring the release to call for the submission of that issue to the jury. The evidence supporting the verdict of the jury on that issue shows that, at the time appellee jumped from the flat car upon which he was engaged in the performance of his duties, he did injure his foot, and that he first applied to it some simple home remedy, but that it was taken in charge by Dr. Jones of Abbott, about two or three days after the injury. After the lapse of about nine days, appellee's foot becoming worse, he was sent by appellant to a hospital at Waco, traveling upon transportation furnished by appellant, and admitted to the hospital upon permit furnished by appellant. Appellee remained at the hospital 19 days, during which time Dr. Murphy, who took charge of appellee when he entered the hospital, examined and dressed appellee's foot about every two days, and gave it careful attention. Appellee left the hospital on March 18th. On that day, and before appellee left the hospital, Dr. Murphy told him, while visiting him in one of the hospital wards, that his foot would be well in two or three weeks. Appellee believed what Dr. Murphy told him, and relied upon his statement. In attending to appellee's injuries, Dr. Murphy did so as an employé of the appellant. About one hour after appellee's conversation with Dr. Murphy concerning his foot, A. D. Krause, appellant's claim agent, called on appellee, who was in bed at the time, and had appellee "undo" his foot, that he (Krause) might see it. Krause also had appellee put his foot upon the floor and bear his weight upon it, stating at the time that it seemed to be getting on very well, and that appellee would be able to resume work by April 1st. Appellee, at this point, asked Krause if he (Krause) had said anything to Dr. Murphy about his injury and what the doctor had said, and to which Krause replied: "Yes, the doctor told me you would be well in two or three weeks." At this point Krause proposed a settlement between appellant and appellee, offering to pay $25. After some "dickering," Krause agreed to pay appellee $39 and a return pass to the hospital in case appellee should desire to return, which was accepted and a release executed. Appellee believed the statements made to him by Krause, relied upon same, and would not have accepted the $39 or executed the release otherwise. Dr. Murphy did, in fact, make the statement to Krause which he repeated to appellee. Krause sought such information from Dr. Murphy, and attempted no sort of denial of

it, but testified thereto himself. The case was tried nearly one year after appellee received his injuries, and more than ten months after his discharge from the hospital, and appellee's injuries are more serious than at that time, and are permanent. He has been unable to work during said period, uses crutches, suffers intense pain almost day and night, is unable to sleep, and when in bed is compelled to rest his foot upon a pillow. At the time of the trial Dr. Murphy conceded the foot to be in much more serious condition than when appellee was discharged, but was of opinion that an examination might show that subsequent causes produced present conditions. Dr. Vaughan and Dr. Cansler testified that the injuries were serious and permanent and that the pain and suffering could only be relieved by amputation; and the former further testified that assuming that the injuries now apparent in the foot are the same that were present at the time of the injury, that a competent physician or surgeon would have detected the same upon an examination of the kind made by those in charge of appellee at the hospital.

[5] It has been said that fraud cannot be exactly defined so as to fit every case, but, generally speaking, "fraud is any act, omission or concealment which involves a breach of legal duty, trust or confidence, justly reposed, and is injurious to another, or by which an undue and unconscientious advantage is taken of another." Kellum v. Smith, 18 Tex. 835; Horton v. Smith, 145 S. W. 1088. Or is "all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." 20 Cyc. 8. We conclude that the facts inducing the execution of the release under discussion bring it within the rule quoted. Both Dr. Murphy and Krause, the claim agent, represented to appellee that his injuries were slight and that he would be able to resume work in two weeks. This was a concealment, etc., of appellee's actual condition, as it was made to appear more than a year afterwards that his injuries were permanent and could have been detected at the time the representation was made. Appellee had the right to rely upon the statements of both the physician and the claim agent, since one was the agent of the corporation which had sent him there to be treated, and the other the physician selected by his employer to attend to his ills, and in both of whom his confidence and reliance might be justly reposed. It also appears clear that injury resulted from a reliance by appellee upon the representations of appellant's agents, etc., since it induced appellee, in view of the subsequent developments of his injuries, to accept from appellant, in payment of such injuries, a sum grossly inadequate. It may be further said, in substantiation of the assertion that the facts bring the execution of the release within the defined rule of fraud, that it is immaterial whether either Dr. Murphy or Krause made the statements they did make to appellee innocently, since the rule is that, even though the person making the false representations believes them to be true, that fact is unavailing, and the injured party is entitled to relief against them if the representations made or repeated were actually false. Missouri, Kansas & Texas Ry. Co. v. Reno, 146 S. W. 207, and c. c.

The third assignment of error is overruled for the reason that the issues raised thereby are disposed of by what we have said in overruling appellant's first assignment of error.

[6] The fourth assignment of error complains of the court's charge submitting to the jury the question of appellee's employment at the time of the fire, whether he went upon the flat car, as claimed, to pass water from the tanks to other employés, and whether failure to furnish him a light to work by, etc., was negligence, and, if so, whether such failure was the proximate cause of appellee's injury. The criticism is that the charge assumes that appellee was employed to extinguish fires (which really is not disputed by the record); assumes that appellee was sent upon the flat car for the purpose of passing buckets of water to other employés (which is also not disputed); assumes that the place where appellee was at work was dark and a light necessary, and that appellee, by reason of both, lost his balance and fell. We have carefully examined the charge complained of, and we are unable to see the force of the criticism. The charge in the usual and accepted manner presents to the jury appellee's theory of the case authorized by the facts and circumstances in evidence, and instructs them that, if they believe from a preponderance of the evidence that the same constituted negligence as defined by the court, to find for appellee, unless they find for appellant under instructions presenting its theory of the accident.

[7] The further criticism is made of the charge that it ignores the claim that appellee went upon the car voluntarily and was hence guilty of contributory negligence. It is sufficient response to this claim to say that no fact or circumstance was shown on trial that would tend to support the claim made in the pleading. On the contrary, it was undisputed that appellee was employed by appellant's foreman and for the specific duties in which he was engaged at the time of his injury.

[8] The fifth assignment complains of the manner in which the court presented the converse of the grounds upon which a verdict might be found for the appellant, the exact objection being that it was a repetition of the facts alleged by appellee to constitute negligence on the part of appellant, and by

such repetition unduly impressed the jury with appellee's side of the case. We think the claim untenable. Just how the trial court could have presented the converse of the issues in the case without referring to the acts asserted by appellee as constituting negligence we are unable to see since it was upon those facts the jury had to pass, and presented favorably appellant's side of the case. Certainly there is no such emphasis placed upon either the issues or the facts which can be said to constitute error.

[9] The sixth assignment complains of the charge of the court, which directs the jury that appellee, when he entered appellant's employ in the manner heretofore stated, "assumed all the risk of being injured while discharging the duties ordinarily incident to his employment," etc. It is urged that this charge assumed that the risk incident to extinguishing the fire was incident to his duties as a "section hand." The charge does not so make it, since it confines it to the risks ordinarily incident to his "employment," which was in extinguishing a fire. The testimony also shows that such was his employment, appellee being but a "sub" section hand, performing such duties only when called for that purpose, and that he had not been called when he was injured to perform the duties of a section hand, but as we have said to assist in extinguishing a fire.

[10] But it is urged that the risk assumed by appellee was in effect extrahazardous, and the charge should have gone further and told the jury as much. If a risk more burdensome than the one ordinarily incident to work in which appellee was engaged is the correct rule, and the court failed to so charge the jury, appellant should have requested such a charge. It is further urged that the charge ignores the fact that appellee was voluntarily engaged in the work in which he was injured. As we have said at another place, there is nothing in the record to support this claim.

The seventh assignment of error again brings into review the alleged errors of the trial court upon the sufficiency of the testimony to authorize the submission to the jury of the fraud of appellant in procuring the execution of the release. We have stated our views in reference to this matter, and further comment thereon is unnecessary.

The judgment is affirmed.