MISSOURI, K. & T. RY. CO. OF TEXAS v. HAVEN. (No. 1693.)

(Court of Civil Appeals of Texas. Texarkana. March 13, 1917. On Motion for Rehearing, March 29, 1917.)

1. RELEASE ⬤�270 57(2) — REPRESENTATIONS OF AGENT—EVIDENCE.

In action by plaintiff section foreman for injuries, evidence on issue of validity of release *held* to authorize finding that physicians, who treated plaintiff, were agents and employés of defendant railroad, authorized to advise plaintiff as to the probability of his recovery from injuries.

2. RELEASE ⬤�270 57(2)—MISREPRESENTATIONS— EVIDENCE.

In action by plaintiff section foreman for injuries, evidence *held* to authorize finding that representations that plaintiff was well, made by defendant railroad's physicians, were intended to influence plaintiff's action in making settlement with defendant's claim agent and signing a release.

3. RELEASE ⬤�270 17(2)—SETTING ASIDE—RIGHT.

If the statements of defendant railroad's physicians, who treated plaintiff, were false, and made to induce plaintiff to settle his claim, that the statements were innocently made would not deprive plaintiff of the right to have the release set aside.

4. RELEASE ⬤�270 17(2)—MISREPRESENTATION— "STATEMENTS OF FACT."

Statement of defendant railroad's physicians, who treated plaintiff, that he "was all right and was well," were "statements of fact," upon which plaintiff foreman had the right to rely in settling his claim and signing a release.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Statement of Fact.].

5. RELEASE ⬤�270 17(2)—MISREPRESENTATIONS— MATTERS KNOWN BY BOTH PARTIES.

The condition of plaintiff foreman's leg was not a matter equally open to him and defendant railroad's physicians, who had treated plaintiff for two months and made statements as to plaintiff's condition, resulting in signing by plaintiff of release.

6. DAMAGES ⬤�270 132(9)—PERSONAL INJURIES— EXCESSIVE DAMAGE.

A judgment for $9,877.35, in addition to $110 previously paid, for injuries which will probably necessitate amputation of injured leg, will not be disturbed on the ground that it is excessive, where there is nothing to indicate that the jury was influenced by anything but the testimony.

⬤�270For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Hopkins County.

Suit by J. M. Haven against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

January 27, 1914, appellee, one of appellant's section foremen, under the supervision of its roadmaster, assisted other employés of appellant in unloading ties along its track from cars moving thereon. As a result of negligence on the part of certain of said other employés in throwing a tie from a car, the tie struck appellee's right leg below the knee, bruising and injuring it. A few days thereafterwards appellee, at the instance of appellant's local surgeon, who first treated appellee for the injury, went to a hospital in Dallas conducted by "the Missouri, Kansas & Texas Railway Company of Texas Employees' Hospital Association," a corporation under the laws of this state, where he remained and was treated by Drs. Webb and Lott, the surgeons in charge, until March 28, 1914. On that day, in consideration of $110 paid to him by appellant, appellee, by an instrument in writing executed by him, released appellant of all claim he had against it for damages on account of the injury so suffered by him. Notwithstanding, he thereafterwards commenced and prosecuted this suit, by which he sought and recovered of appellant judgment for $9,877.35 as the damages, in addition to the $110 paid to him as stated, he was entitled to on account of said injury.

The main controversy on the trial was as to whether the release executed by appellee was binding on him or not. He contended it was not, because, he asserted, he was induced to execute it by his reliance upon representations, which he alleged were false, made to him by Drs. Webb and Lott, who, he alleged, acted for appellant in making same, as to extent of the injury to his leg. Appellant, on the other hand, contended that the settlement made by it with appellee, evidenced by the release, was a fair one, freely made by him, with a knowledge of all the facts known to it; that the representations made to him by Drs. Webb and Lott were not false and fraudulent, but were true and honest expressions of .their opinions; and, further, that it was not bound by such representations, because said Drs. Webb and Lott were not its agents, and in making the representations did not act for it.

The representations in question were made to appellee after Drs. Webb and Lott had treated him about two months, and just before he executed the release, and were that the injury to his leg was only temporary; that, while it was still slightly swollen, his leg "was all right and was well"; that appellee could safely go back to his work as a section foreman in a few days; and that the swelling in·his leg would disappear "as quick as he got out and went to work." It appeared

from the testimony that, instead of passing away, as the doctors said it would, the swelling in appellee's leg increased; that his leg gradually grew worse, and at the time of the trial was in a condition which probably would necessitate its amputation to save his life.

On the issue as to whether the release was binding on appellee or not, the court instructed the jury as follows:

"If you believe from the evidence that Dr Webb, or Dr. Lott, or both, were agents of defendant, and authorized to bind defendant in regard to representations as to the condition of plaintiff's leg, and you believe that Dr. Webb or Dr. Lott represented to plaintiff that his leg was all right and was well, and that as soon as he got out and went to work the swelling therein would leave it, and that all plaintiff needed was some exercise, and if you further believe that such statements, if any, were false, and made for the purpose of inducing plaintiff to make a settlement and to execute a release. and if you further believe that plaintiff believed such representations, if any, to be true, and relied on the same, and if you believe that as the result of such statements, if any, plaintiff was induced to settle said claim and execute a release, and if you further believe the sum paid plaintiff was less than reasonable compensation for his injuries, if any, then such settlement and release is not binding on the plaintiff."

Chas. C. Huff, of Dallas, and Dinsmore, McMahon & Dinsmore, of Greenville, for appellant. Evans & Shields, of Greenville, and C. E. Sheppard, of Sulphur Springs, for appellee.

WILLSON, C. J. (after stating the facts as above). In support of its contention that the release executed by appellee was binding on him, and that the court therefor should have instructed a verdict in its favor, appellant refers (1) to undisputed testimony in the record showing that the hospital association mentioned in the statement above was incorporated under the laws of this state as a benevolent or charitable society without capital stock, that the funds necessary to pay the expenses of the association were obtained by assessments against its members; and that Drs. Webb and Lott were employés of the association, and (2) to testimony of witnesses to the effect that Drs. Webb and Lott had no interest in nor anything to do with the settlement made with appellee nor with any settlements made by appellant with its employés, that any statements made by them to appellee were nothing more than honest expressions of their opinions as to appellee's physical condition at the time they were made, and were not made to induce appellee to act as he did, and that appellant's claim agent in making the settlement was not influenced by any statement made by said doctors as to appellee's condition.

It might be conceded that if the testimony specified was all there was in the record appellant's contention should be sustained. But there was other testimony before the court which, as we view it, authorized (1) a finding

that Drs. Webb and Lott, at the time they made the statements to appellee, were, as the surgeons in charge of said hospital, appellant's agents and employés, and in making the statements acted within the scope of their authority as such, and (2) a finding that the representations were intended to influence appellee's action in the matter of making a settlement with appellant.

While the hospital association was a corporation as stated, it appeared from testimony that it was controlled by a board of trustees consisting of seven members, a majority of whom, by the laws of the association, consisted at all times of "the persons who, for the time being," occupied toward appellant the relationship, respectively, of assistant to its president, its general manager, general attorney, and general superintendent. So it appeared that power to control the association was in appellant's general officers as such, and hence in appellant, for it had power of control over its general officers.

It further appeared from testimony that appellant had issued to Drs. Webb and Lott, as such surgeons, and that they had accepted and used, passes entitling them to free transportation over appellant's line of railway. As appellant, it seems, lawfully could not have issued such passes, and Drs. Webb and Lott lawfully could not have accepted and used same, unless as such surgeons they were employés of appellant (articles 1532, 1533, 1534, Vernon's Penal Code), it would seem that the fact that as such surgeons they had and used such passes would have authorized a finding that the relationship of employer and employés existed between them and appellant.

And there was other testimony tending to show that such relationship existed. As a part of their duties as such surgeons, as they seem to have construed same, said doctors made reports to appellant's claim agent for his use in making settlements with injured employés, showing the condition of such employés with reference to their injuries. And on the occasion when appellee executed the release in question it appeared that Dr. Lott accompanied him to the office of appellant's claim agent, to whom he introduced appellee, and to whom he made statement as to appellee's then condition. It further appeared that it was in compliance with Dr. Lott's direction to one of appellant's employés in its general offices at Dallas that said employé issued to appellee a pass entitling him to free transportation from Dallas to his home in Hopkins county.

[1] The testimony so far referred to, we think, was amply sufficient to authorize a finding that Drs. Webb and Lott, as chief and assistant surgeon, respectively, in charge of said hospital, were agents and employés of appellant. If they were, then it was within the scope of their employment as such surgeons, not only to treat but to advise appellee concerning the nature and duration of his injuries and the probability of his recovery therefrom. Railway Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669.

[2, 3] The testimony tending to show that the representations made to appellee were intended to influence his action in the matter of the settlement he made with appellant's claim agent, was, we think, as has been before stated, sufficient to support a finding that they were so intended. We do not mean by that to say that the testimony was sufficient to show that the surgeons at the time they made the statements knew same to be untrue, but that same were made with knowledge on their part at the time that appellee contemplated leaving the hospital, and, before leaving, taking up with appellant's claim agent the matter of a settlement of his claim against appellant for damages on account of the injury he had suffered, and that said surgeons expected appellee would be influenced by what they said as to his condition in making the settlement. If there is any testimony at all in the record indicating that the surgeons may not, in making the statement they did to appellee that he "was all right and was well," and that the swelling in his leg would disappear when he got out and took up his work as section foreman, have dealt fairly with him, it consists of the testimony of Dr. Lott indicating that he knew, at the time he made the statement to appellee, that he was suffering from varicose veins (which, appellee testified, was due to the injury), and that it would be "bad treatment" for a person suffering such veins to stay on his feet and do the work of a section foreman. With reference to this testimony of Dr. Lott, it is fair to say, however, that he further testified that while appellee was in the hospital he told him (appellee denying it) that he had suffered a long time from such veins. But the rule seems to be that if the statement were false, and were made to appellee to induce him to settle his claim, the fact that they were innocently made by the surgeons would not deprive appellee of a right to have the release set aside. Railway Co. v. Neill, 159 S. W. 1180; Railway Co. v. Reno, 146 S. W. 207; Railway Co. v. Maples, 162 S. W. 426. In the Reno Case the court said:

"Notwithstanding appellant's agent may have believed the representations to be true which he made to plaintiff to induce him to execute the release, yet, if the same were false, plaintiff was entitled to relief against them, notwithstanding the fact that defendant's agent may have innocently made the statements. It is immaterial that the agent may have made the statements under the honest belief that they were true, whereas, in fact, they were not."·

It appeared from the testimony of appellee as a witness in his own behalf that, immediately after Drs. Webb and Lott advised him that his leg was "all right and was well," he told Dr. Lott he was going to leave the hospital and go home; that Dr. Lott then asked him if he was acquainted with the claim

agent, and, when he replied in the negative, asked him if he "wanted to settle," and on his reply, "Yes, we have that to do before we go to work, and I had just as well settle with him here as after I get home," said, "I will go up there with you and introduce you to the claim agent." Appellee testified that he and the doctor then—

"got on the elevator and went to the claim agent's rooms, and he introduced me to the claim agent, and he told him about my leg, the condition it had been in, and how long I had been in the hospital, and he went on down. Dr. Lott told the claim agent there that my leg was well and that I was ready to settle and go to work. He turned and walked out after he told the claim agent my leg was well and that I had come up to settle and was ready to go to work."

[4] It is insisted, however, that the statements attributed to Drs. Webb and Lott were merely expressions of their opinions as medical men, and not statements of fact which appellee had a right to rely upon. We think the statement that appellee's leg "was all right and was well" ought not to be construed as the opinion merely of the surgeons. The test by which to determine whether a representation is a mere expression of an opinion or a substantive fact is stated by Mr. Black (1 Rescission and Cancellation, § 77), quoting from Addison on Torts, to be:

"If the representation is as to a matter not equally open to both parties, it may be said to be a statement of a fact as such; but if it is as to a matter that rests merely in the judgment of the person making it, and the means of deriving information upon which a fair judgment can be predicated are equally open to both parties, and there is no artifice or fraud used to prevent the person to be affected thereby from making an examination and forming a judgment in reference to the matter for himself, the representation is a mere expression of an opinion."

[5] It seems to us it cannot fairly be said that the real condition of appellee's leg was a matter equally open to him and the trained experts who had treated it for two months, nor that "the means of deriving information upon which a fair judgment" as to its condition could be predicated were equally open to him and them.

We do not think the conclusion reached is opposed by rulings made in Railway Co. v. McCarty, 94 Tex. 298, 60 S. W. 429, 53 L. R. A. 507, 86 Am. St. Rep. 854, Quebe v. Railway Co., 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545, Railway Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669, Railway Co. v. Kramer, 141 S. W. 122, Railway Co. v. Polka, 57 Tex. Civ. App. 626, 124 S. W. 226, and Railway Co. v. Williams, 44 Tex. Civ. App. 168, 99 S. W. 141, cited by appellant, when the nature and the facts of those cases are kept in mind.

The question in the McCarty Case was as to whether the plaintiff was entitled to have the release he had executed set aside on the ground alone that it was executed as the result of a mutual mistake on his part and on the part of the railway company. Such a question is not presented by the record before us.

In the Polka Case it appeared that the physician who made the representation to the plaintiff was not an employé of the railway company, and that the rights of the parties, as in the McCarty Case, turned upon a question as to whether the plaintiff could avoid the release on the ground of mutual mistake as to the extent of his injury.

In the Williams Case the plaintiff sought to avoid the release he had executed on the ground that he was misled as to the nature and legal effect of the instrument by representations made to him by the agent of the railway company. The plaintiff in that case did not contend that he was entitled to have the release he had executed set aside, if it evidenced the real agreement between him and said agent.

In the Quebe Case the plaintiff, when struck on his breast and throat by a piece of timber, fell; his head striking the ground with force. Believing that the only injury he thereby suffered was that to his breast and throat, and that that, as the railway company's surgeon advised him, was trifling, he reported to the company for re-employment and executed the release in question. Neither the plaintiff nor the railway company's agents, at the time the release was executed, suspected that the plaintiff had suffered or might suffer any injury, except such as the blow on his breast and throat had produced. Afterwards he became blind as the result, he alleged, of injury to his head, caused by its striking the ground when he fell. The only question in the appeal was whether the release, as executed, should have been construed as covering the injury to the plaintiff's head, which caused the blindness. The court held that the answer to the question depended upon the intention of the parties, and that the recitals in the release showed conclusively that it was their intention that it should apply to that injury, as well as to the injury to the plaintiff's breast and throat. In the course of the opinion the court remarked that:

"Upon the subject of fraud there was nothing to submit, had there been a request for a submission of that question. The statement made by the surgeon as to the character of plaintiff's injuries was only his medical opinion, which accorded with all that was known or believed, and was made with no purpose, so far as appears, to procure a release or other advantage."

The applicability of the case as authority in the one before us lies entirely in the statement in the opinion that the representation by the surgeon to Quebe that the injury to his breast and throat were trifling was only the surgeon's medical opinion. We do not concede that a statement by a surgeon, to a person he has treated for an injury to his leg, that his leg "was all right and was well," was as much the expression of an opinion as the statement by a surgeon that an injury

suffered by a person to his breast and throat was "trifling"; but, if we did, to our minds there would still be an important distinction between the statement made by Dr. Lott to appellee and the statement made to Quebe by the railway company's surgeon, in this: That the statement made to appellee, however innocently it may have been made, was untrue in fact as a statement of the condition of his leg, to which it applied, while the statement by the surgeon to Quebe was true in fact as a statement of the condition of his breast and throat, to which it applied.

In the Huyett Case the plaintiff's leg was broken and his wrist dislocated as the result of his having been knocked off a bridge. On the next day after he had offered to accept, and the railway company's agent had refused to give him $2,000 in satisfaction of his claim for damages, Dr. Scott, the company's surgeon, said to him:

"Huyett, you are not damaged; you will soon be as good a man as ever; you will soon be able to go to work."

Relying on the statement, the plaintiff afterwards executed a release to the company in consideration of $250 it paid to him. The statement of Dr. Scott to the plaintiff was made at a different time and on a different occasion from the time and occasion when the plaintiff executed the release, and there was no evidence showing that Dr. Scott knew the plaintiff had discussed the matter of a settlement with the claim agent, or that the latter knew that Dr. Scott had made the statement in question to the plaintiff, or that they in any way acted together or for the purpose of procuring a release from the plaintiff. The Supreme Court reversed the judgment of the Court of Civil Appeals, affirming a judgment of the trial court in the plaintiff's favor, on the ground alone that it did not appear that the representation relied on to avoid the release was "made in the transaction in which the contract of settlement was made, nor by the agent authorized to represent the defendant therein, but, so far as the evidence indicates, it was disconnected from that contract, and made by one [the surgeon] whose duties, as agent, had no relation to such matters," citing Story on Agency, § 135, and other authorities. If the conclusion reached by us that the testimony in this case was sufficient to support a finding that Drs. Webb and Lott, in their capacities as surgeons, were agents and employés of appellant, is correct, then it must be apparent that the ruling by the Supreme Court in the Huyett Case, just referred to, has no application here.

In the Kramer Case the plaintiff, it seems, had suffered an injury to his pelvis, and surgeons employed by the railway company had represented to him that he was not permanently injured and would be able to return to his work within a month or six weeks. The plaintiff afterwards suffered from epilepsy, due, it was determined, to the injury he received. The following excerpt from their opinion shows the grounds upon which the Court of Civil Appeals acted in reversing a judgment in favor of the plaintiff and rendering judgment in favor of the railway company:

"In view of the fact that there is no testimony in this case indicating that the physicians or the claim agent knew or had reason to know that in truth Kramer was not as well a man as they represented him to be, and especially in view of the fact that he had no symptoms at that time indicating epilepsy, and that he made no contention below, and apparently makes none here, that the representations of the physicians and the action of the claim agent thereon were not all in good faith, and especially in view of the fact that the physicians testified that their representations were their honest medical opinions, we are of opinion that the court below erred in submitting the issue of the validity of the release to the jury. If there had been any evidence of fraud, bad faith, or known concealment on the part of the claim agent or the physicians, it may be that the issue would properly have been submitted, by the mere fact that the physicians, with the light which they had, expressed their medical opinions to plaintiff that he was practically well, with no showing that they knew these statements to be false, without any testimony indicating that they made them for the purpose of bringing about the release, would not, we believe, suffice to avoid a voluntary settlement entered into by the plaintiff at a time when his knowledge of his symptoms was greater than any one else's—when he might, if he had seen fit, have taken the opinions of other physicians."

The difference between the facts of that case as found by the Court of Civil Appeals, and the facts of this one as found by us, is that in this one the statement of the physicians was more than the mere expression of their opinions, and, moreover, was made, as the jury might have found, to induce appellee to execute the release he sought to avoid.

[6] It is insisted that the judgment is for an amount in excess of the sum appellee was entitled to recover. When testimony as to the known consequences and as to the probable consequences to him of the injury is considered, we do not think we should disturb the judgment on that ground. There is nothing in the record indicating that the jury was influenced in determining the amount they should award appellee by anything except the testimony. "The law," said the court in Railway Co. v. Gibson, 38 S. W. 480, "commits the extent and probable duration of an injury, in cases where these matters cannot be arrived at with some degree of precision, to the sound judgment of the jury. The power of revision in reference to the amount of the verdict is exercised only where a manifest wrong has been done."

The assignments not disposed of in effect by what has been said also do not, we think, present a reason why the judgment should be reversed. Therefore it is affirmed.

### On Motion for Rehearing.

It is insisted that the statement in the opinion that it appeared from the testimony that appellant had issued to both Dr. Webb and Dr. Lott, as surgeons in charge of the·

hospital where appellee was treated for the injury he sustained, and that they had accepted and used, passes entitling them to free transportation over appellant's line of railway, is erroneous. It is, so far as it applies to Dr. Webb. On a re-examination of the record we fail to find testimony showing he had accepted and used such a pass. That the statement is erroneous as to Dr. Webb is immaterial, however, from a legal standpoint, in view of the fact that the representations made by him to appellee were also made by Dr. Lott, who had accepted and used such a pass. The motion does not, we think, present a reason why the judgment rendered by this court should be set aside. Therefore the motion is overruled.