GULF, COLORADO & SANTA FE RAILWAY COMPANY v. BERT HUYETT.

Decided February 22, 1908.

**Personal Injuries—Release—Misrepresentations—Evidence.**

In a suit for personal injuries, the issue being whether or not plaintiff was induced to execute a release of his claim by the representations of the defendant's surgeon to him as to his condition and the effect of the injuries and whether or not the claim agent of the defendant knew of said representations and took advantage of the effect of the same upon plaintiff's mind in making a settlement, evidence considered, and held sufficient to support the finding of the jury in plaintiff's favor.

Appeal from the District Court of Cooke County. Tried below before Hon. Clem B. Potter.

*J. W. Terry* and *A. H. Culwell,* for appellant.

*Stuart & Bell,* for appellee.

SPEER, ASSOCIATE JUSTICE.—Appellee recovered a judgment against appellant for damages for personal injuries alleged to be the result of the negligence of appellant in operating a pile driver at a point on its line in Oklahoma. The case has been once before appealed to this court and to the Supreme Court, and a reference to the opinions upon such appeals will sufficiently disclose the issues involved. Gulf, C. & S. F. Ry. Co. v. Huyett, 14 Texas Ct. Rep., 124, and 99 Texas, 630.

In reversing the case before, the Supreme Court used the following language: "And it may be that if the claim agent in effecting the settlement knew and took advantage of the state of plaintiff's mind caused by deception practiced by the doctor the result would be the same" (that is, the release pleaded as a defense would be affected by the physician's representations). Following this suggestion, the trial court on the last trial instructed the jury as follows: "If you find from the evidence that Dr. Scott prior to the execution of said release represented to the plaintiff that his injury was not so great as it really was, and if the plaintiff believed said representations to be true and relied on the same, and if you further believe that the defendant's agent Cox knew of said representations and that the plaintiff relied on the same, and took advantage of said representations and the plaintiff's confidence therein

to settle with the plaintiff for the sum less than compensation for his injury, then the release is not binding on the plaintiff." All questions presented on this appeal that were not disposed of adversely to appellant on the former appeal relate to the issue thus submitted. We are of opinion that these assignments must be overruled on the ground that the evidence, though circumstantial in some respects, is sufficient to support the verdict in appellee's favor, as the following excerpts from the testimony will disclose:

Appellee testified: "I told Dr. White for either him or Dr. Scott to wire Mr. Lee, the claim agent at Galveston, that I would like to see him. It was after this that Dr. Scott examined me. Dr. Scott examined me after I was expecting the claim agent, because I had told Dr. White to telegraph for or wire Mr. Lee or send him word. Mr. Cox, the claim agent, then came to see me first on Friday, the 16th, and I then told him that I would not take less than two thousand dollars by way of compromise. The next time I talked to Mr. Cox was Tuesday morning after that Friday evening. In the meantime Dr. Scott made the examination of me. The examination made by Dr. Scott and the statement that he, Dr. Scott, made to me were between the time Cox was there the first time, when I told him I would not take less than two thousand dollars, and the time Cox was there the last time, when I agreed to take the two hundred and fifty dollars. The reason I came down from two thousand dollars on Friday to the two hundred and fifty dollars on Tuesday was on account of Dr. Scott's statement to me. I would not have settled for the two hundred and fifty dollars but for the statements that Dr. Scott made to me. . . . I did not talk to him (Cox) but a few minutes. I did not accept any such settlement for time. After that I saw Dr. Scott at the Gulf, Colorado & Santa Fe hospital. I think it was Friday night that Mr. Cox came to see me. Dr. Scott came to see me next day, that was Saturday. I think it was the next day after Mr. Cox came to see me. It was October 17, 1903, that Dr. Scott came to see me. I saw Mr. Cox again one or two days after Dr. Scott examined me. It was Monday. He came there to the hospital. He raised the question of settlement again. He came there with Dr. White in the hack. Dr. White is engaged in partnership with Dr. Scott at the hospital. Mr. Cox commenced a conversation with me to settle. He said to me: 'I will give you two hundred and twenty-five dollars to settle,' and at that time Dr. White came out of the hospital and he said, 'Cox, I want to see you a minute,' and called him off to the west end of the house. They had a conversation and he came back to me and said, 'Mr. Huyett, I have just talked to Doctors Scott and White in regard to your ailments and they stated to me that you will soon be all right,' and he says, 'I think you will soon be all right, and to cause this settlement I will make it twenty-five dollars more, making it two hundred and fifty dollars.' After Dr. Scott examined me and told me I would soon be as good a man as ever, I believed the statement. I had seen Dr. Scott quite frequently there at the hospital. I would not have made the settlement for two hundred and fifty dollars but for

Dr. Scott's statement, and relied upon the same. Mr. Cox said, 'Huyett, I have seen Dr. Scott and have talked to him in regard to your case and he says you will soon be all right, and I have seen Dr. White and have talked with him and he says you will soon be all right, and I believe you will soon be all right, and to cause this settlement I will give you twenty-five dollars more to make it two hundred and fifty dollars.'"

Dr. Scott testified: "It is in a sense normally true that I have been in the employ of the defendant a little over twelve years and that was my testimony in November, 1904. As to the nature of the injuries, I advise the claim department of the road, but it is the identical advice that I give to the patients as regards to the nature of their injuries. I advise the patients and advise the claim department and give them the same advice, and this is the only duty I have with reference to the railroad company. . . . Mr. Huyett told me he was thinking about settling. He told me he did not know whether to settle or sue the company, and asked me what I thought about it. I told him I thought it was better to settle a case any time than to sue, as one would get better results. I examined him in bed and standing up in different positions, and I expressed an opinion to him as to the results of his injuries. I did tell him that he would eventually be able to work again. I have no authority to settle claims. I have absolutely nothing to do with the claim department of the road further than to advise them of the patients to the best of my ability what the conditions are regarding the nature, extent and result of their injuries. Sometimes the claim agent asks me what a patient's condition is, and sometimes they settle without asking me. I always have a report sent in to the claim department. The only duty I have with reference to the railroad company is to advise the patients and advise the claim department. . . . I told Huyett the nature and extent of his injuries. I made no statement to him with a view of inducing him to settle with the company, no further than to say that it was better for a man to settle with the company than to enter upon a prolonged law suit. I do not know how long that conversation was before he settled. I think he seemed to have a good deal of confidence in me. . . . I have absolutely nothing to do with the claim department of the road further than to advise them of the patients to the best of my ability what the conditions are."

Dr. White testified: "I called upon Mr. J. J. Cox, who was the local claim agent, and told him that I had wired Mr. Lee over his head with reference to the Huyett matter, advising him he was going to institute suit on a definite date, and suggested to Cox that it might be well to come out and see him. I said a thing, perhaps, I ought not to have said, that Huyett was raising hell about a settlement. Mr. Cox came out that afternoon. I was out there to supper. I think Cox drove back to town with me. I had phoned him to come out and see Mr. Huyett. As I remember now, Cox drove back to town with me in my buggy and I asked him if he saw Huyett. I did not see them together. I also asked if he had effected a settlement, and he said he had not. I told him (appellee)

the afternoon he told me he was going to bring suit that the claim agent would make him a reasonable offer in order to keep down any differences."

J. J. Cox, the claim agent who effected the settlement for two hundred and fifty dollars with appellee, testified: "I had my office at Avenue A, and their (Doctors Scott and White's) office is on the next corner within a half block of each other. I represent the railroad and they are chief surgeons for the hospital association. Dr. White phoned me that Huyett wanted to see me and, in the same conversation said that Huyett was in no condition to leave the hospital. I do not remember talking to Dr. Scott. . . . I always consult with the doctors as to the extent of the injury. I talked to Dr. White about the injury in this case. . Doctors Scott and White are the two surgeons."

From this evidence we think the issue submitted in the paragraph quoted was fairly raised, and that from it the jury was authorized to find for appellee.

The questions disposed of on the former appeal will not be again discussed.

We find no error in the judgment, and order that the same be affirmed.

*Affirmed.*

Writ of error refused.