EL PASO & SOUTHWESTERN CO. v. KRAMER.†

(Court of Civil Appeals of Texas. El Paso. Nov. 16, 1911. Rehearing Denied Nov. 29, 1911.)

RELEASE (§ 16*) — PERSONAL INJURIES — MISTAKE AS TO EXTENT—EFFECT.

A release of all claims for damages which the releasor had or which might thereafter accrue from a certain injury while in defendant's employ, executed with the same means of knowledge as those possessed by the defendant, voluntarily, but in reliance upon the statements of defendant's physicians made in good faith, and which constituted their honest opinion as to plaintiff's injuries, not made for the purpose of inducing a settlement, to a claim agent who, in securing such release, acted on such statements in good faith, cannot be avoided because the plaintiff's injuries were more serious than believed.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 31; Dec. Dig. § 16.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by P. C. Kramer against the El Paso & Southwestern Company. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered for defendant.

Hawkins & Franklin, for appellant. Patterson & Wallace, for appellee.

PETICOLAS, C. J. The appellee had judgment below against the appellant in a suit for damages for personal injuries.

There is but one assignment of error, to the effect that the court below erred in refusing a peremptory instruction for the defendant, for the reason that it was shown that the plaintiff and defendant had compromised and settled all of the cause of action set up by the plaintiff in this suit.

The compromise and settlement having been pleaded by appellant in the lower court, the appellee by supplemental petition to avoid said release alleged: That certain statements and representations had been made to him by appellant's physicians to the effect that his injuries were not serious or

permanent, but temporary, and that he would be entirely well and strong in a short time. That he met appellant's claim agent in El Paso, who informed him that said physicians had made a report to him of his (appellee's) condition, and that his injuries were slight. That, relying upon the statements and representations so made by said claim agent, he agreed to settle, signed a release, and was paid $450.00. That the said statements of the physicians and claim agent were false and untrue, and known to be false and untrue by each of said physicians and by said claim agent at the time they were made, and were made for the sole purpose of inducing appellee to sign said release. That appellee believed said statements, and therefore did sign said release, which otherwise he would not have done.

The evidence in the trial court showed that the plaintiff was at Dawson, N. M., under the care of Drs. Divers and Bayley for some time, afterwards was under the care of Dr. Thomson at Tucumcari, who were all physicians in the employ of the appellant, and that about December 18th the plaintiff came to El Paso, negotiated with one D. D. Willis, the claim agent, with reference to a settlement, executed the following release: "El Paso & Southwestern Company Release. Know all men by these presents, that I, P. C. Kramer, of Tucumcari, in consideration of the sum of four hundred and fifty and no 100th dollars to me in hand paid by the El Paso & Southwestern Railroad Company, a corporation organized under the laws of Arizona, the El Paso & Southwestern Railroad Company of Texas and El Paso & Northeastern Railroad Company, corporations organized under the laws of Texas, the El Paso & Northeastern Railway Company, the Alamogordo & Sacramento Mountain Railway Company, the El Paso & Rock Island Railway Company, the Chicago, Rock Island & El Paso Railway Company, and the Dawson Railway Company, each being corporations organized under the laws of New Mexico, and the El Paso & Southwestern Company, a corporation organized under the laws of New Jersey, the receipt whereof is hereby confessed and acknowledged, do hereby release and discharge the above-named corporations and each thereof from all actions, causes of actions, claims, debts, and demands whatever which I now have or which may hereafter accrue to me by reason of or resulting from my having been injured on or about October 10th, 1909, at or near Dawson, in Colfax county, New Mexico, while employed as a brakeman, or by reason of any cause or matter whatever. To secure this settlement and the payment of said sum, I do hereby represent to said companies that I am twenty-one years of age, and that I rely wholly upon my own judgment, belief, and knowledge of the nature, extent, and duration of said injuries and the disabilities and damages resulting therefrom, and that no representations or statements about them made by said companies' surgeons or agents have influenced me in making, or induced me to make, this settlement. It is expressly understood by both parties hereto that the above-named sum is paid as a compromise, and that the payment of the same shall not be construed as an acknowledgment of liability on the part of any of the above-named companies. Witness my hand and seal at El Paso, Texas, December 18th, 1909. [Signed] P. C. Kramer"—accepted $450 in settlement of his cause of action, and so compromised his case. About February of the succeeding year he went back to work, and afterwards developed epilepsy.

It is shown that Drs. Divers and Bayley examined plaintiff at Dawson, and expressed the opinion to him that he was not permanently injured and would be able to return to work within a reasonable time, and that Dr. Thomson also examined him and expressed the opinion to him that he would be able to work within about a month or six weeks; that, when the witness was negotiating with Willis for a settlement, he told Willis that these physicians had said he was all right, and would be able shortly to go to work, and that Willis replied, "Yes," he had received some letters from them, and that they thought he was well. The letters from Drs. Bayley and Thomson to Mr. Willis were as follows:

"Stag Cañon Fuel Company, Hospital Department, Dawson, New Mexico, Nov. 10th, 1909. Mr. D. D. Willis, Claim Agent E. P. & S. W. System, El Paso, Texas—Dear Sir: Your letter of Nov. 8th, received regarding brakeman Kramer. Kramer has a fracture of the right side of the pelvis, but I do not consider it a severe one. The particular part of the pelvis involved is the ilium. Kramer is now up on crutches and has very little pain in his hip and that only once in a while. He is anxious now to go to Tucumcari as soon as he can travel so that he can be at home with his wife. I think he will be able to leave here in ten days or two weeks to return home, but will probably not be able to work for a month or six weeks after. He should get a good result and not have any permanent disability, but, of course, may have a slight limp. He is anxious to go to work again as soon as able. Hoping that this will give you the desired information, I am, Yours truly, [Signed] W. A. Bayley, M. D."

"Stag Cañon Fuel Company, Hospital Department. Dawson, New Mexico. Nov. 26th, 1909. Mr. D. D. Willis, Claim Agent, E. P. & S. W. System, El Paso, Texas—Dear Sir: Unfortunately I did not get a chance to speak with you while in El Paso about Pete C. Kramer, and did not receive your letter until my return to Dawson. Kramer was very anxious to return to Tucumcari that he might be at home, so as he is well able to get

about on crutches we took him with us on the trip down and turned him over to Dr. Thomson at Tucumcari. I saw him on my return, and he says that he is feeling fine and will be glad when he can go to work again. He mentioned a job of bossing a gang there which would commence in two or three weeks that he thought he could do providing he could get it. However, I don't think he should do much work for at least another month, and he may not be able to work for six weeks or two months. He is very anxious to get back to work with the R. R. again, and told me that he would be satisfied if the company would give him the time that he had lost while off duty providing that he was not a cripple and could still do his work. I don't think he will have any trouble in doing his work. He was a well-behaved patient while in the hospital and tried to follow instructions. Any more information you would like about him I will be glad to give you if possible. Very truly yours, W. A. Bayley, M. D."

"El Paso & Southwestern System, Tucumcari 12/14/9. Mr. D. D. Willis, Claim Dept. —Dear Sir: Brakeman P. C. Kramer, who was injured at Dawson some two months ago, just left my office with a request that I write you that he would like to see you and get settled up, as he wants to bid in a work train that Trainmaster Beeth has been telling him about. He wants to know when you will be up or do you want him to come down to see you. With best regards, Yours truly, R. J. Thomson, Local Surg."

The court below charged the jury as follows on this subject: "You will first determine the issue of defendant's liability under its plea of release and settlement, and on this issue you are instructed that if you find from a preponderance of the evidence that Dr. Diver, Dr. Bayley, or Dr. Thomson prior to the execution of the release read to you in evidence represented to the plaintiff that his injury was not so great as it really was, and if the plaintiff believed said representations to be true, and relied on the same as being true, and if you further believe and so find from the evidence that defendant's agent, D. D. Willis, knew of said representations, and that the plaintiff relied on the same and took advantage and made use of said representations and the plaintiff's confidence therein to settle with the plaintiff, and that said settlement and release was for a sum less than reasonable compensation for the injury plaintiff sustained, if any, then and in that event, should you so find, you are instructed that the release and settlement would not be binding on the plaintiff. * * *" There is no evidence in the record to show that Drs. Bayley, Thomson, or Divers knew, or had reason to know, at the time of their representations to plaintiff with reference to his condition that he was not, in fact, a well man, and there is no evidence to show that their statements to him on this subject were anything else than their honest medical opinions as to his condition, based upon the symptoms he had at that time developed and the examinations which they had made of him. The only affirmative evidence on this subject was statements in evidence by each of these physicians to the effect that the representations made by each of them to plaintiff were true, and were their honest medical opinions. Plaintiff does not in any way impugn the good faith of the statements made by these physicians, but contends that as the statements were made and as he relied upon them, and as the verdict of the jury shows the epilepsy to have been caused by his injury, that the settlement was not binding upon him.

From the testimony, and in deference to the verdict of the jury, we find the following conclusions of fact:

(a) That the accident was the proximate cause of the epilepsy, but at the time of the settlement and of the physicians' representations there were no symptoms of the epilepsy present.

(b) That Kramer relied on the statements of the physicians as to his condition, and but for them would not have settled at the figure he did.

(c) That the representations of the physicians were made in good faith, in an honest belief that said representations were true, and the same constituted their medical opinions as to Kramer's condition, and were not made for the purpose of inducing a settlement.

(d) That the claim agent in making said settlement acted on the letters from said physicians in good faith and in the honest belief that they accurately stated Kramer's condition.

### Conclusions of Law.

It remains, therefore, to be seen whether, where the plaintiff has made a voluntary settlement of his cause of action for a consideration not grossly inadequate, he can avoid the effect of the same by showing that he relied upon the opinions of appellant's physicians, when the evidence shows that the same were not tainted with fraud, not made for the purpose of inducing a settlement, and were their medical opinions, delivered in good faith. In the case of Railway v. McCarty, 94 Tex. 298, 60 S. W. 429, 53 L. R. A. 507, 86 Am. St. Rep. 854, a release was executed upon an assumption by both plaintiff and defendant that certain injuries were present. Subsequently additional injuries developing, the case was submitted to the jury on an issue of mutual mistake. The Supreme Court held in answer to a certified question that the release was binding, and said: "The appellee, who was the plaintiff in the court below, had at least the same knowledge, and the same means of obtaining knowledge, as the appellant, and, if there

was no fraud in the transaction, the settlement was binding upon him. That, where a party who has a claim against another agrees upon a settlement of his claim and accepts a sum of money or other thing of value in settlement of such claim, he is, in the absence of fraud or concealment, concluded by the settlement, is a proposition sustained, as we think, by the great weight of authority." In Railway v. Brown, 69 S. W. 651 (writ of error denied), it was held that a release might be avoided where induced by the false statement of a physician acting as the representative of the company and made for the purpose of inducing the execution of such release that the bones of the arm had knitted together. In its opinion the court says that "the physician's statement that the bones had knitted together was a statement of fact, and not the mere expression of a medical opinion." We are inclined to distinguish this case from the case at bar, in that whether or not the bones of an arm had knitted would seem to be susceptible of accurate determination. In Jones v. Railway, 32 Tex. Civ. App. 198, 73 S. W. 1083, the case was decided on demurrer. The allegations in the petition were that the representations of the physicians were untrue and known to be untrue, made for the sole purpose of inducing a settlement, made fraudulently for the purpose of procuring a release. It is apparent that, as the allegations were taken as true on demurrer, the case is not analogous to the one at bar. The case of Quebe v. Railway, 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, by the Supreme Court, was one in which the plaintiff sought to avoid a release which on its face covered all injuries, on the ground that it was intended to cover only the injuries to the throat and breast. The case turned largely on other issues than those of fraud, but the plaintiff had been told by the surgeon of the company that the injuries were trifling, whereupon he reported for work and was required to execute the release; the consideration being the sum of $1. Judge Williams says in the opinion: "The statement made by the surgeon as to the character of plaintiff's injury was only his medical opinion, which accorded with all that was known or believed, and was made with no purpose, so far as appears, to procure a release or other advantage. No circumstance of undue influence or overreaching is shown. Upon the subject of fraud there was nothing to submit, had there been a request for submission of that question." The case of Railway v. Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1191, was one in which the physician and the claim agent visited the plaintiff while sick, continually seeking a release and representing that the plaintiff was not injured, and the court concluded that the two knew that the injuries were more serious than they represented them, that such representations were falsely made to induce the release, and they constituted acts of fraud and conspiracy. It is apparent that this case is of no weight in determining the one before us. In Railway v. Williams, 37 Tex. Civ. App. 198, 83 S. W. 248, the case was one in which the plaintiff contended that he was ignorant of the true nature of the release. The court held that, before he would be authorized to recover in the case, he would be required to show, not only that he was ignorant of the true nature and effect of the release, but that his want of knowledge was procured or induced by some act of the defendant amounting to fraud. In Railway v. Williams, 44 Tex. Civ. App. 168, 99 S. W. 141 (writ of error denied), which was on another appeal of the same case mentioned above, the court reversed and rendered the case, saying: "It is well established that voluntary settlements are favored, and that if a doubt or dispute exists between parties with respect to their rights, and all have the same knowledge concerning the circumstances involving those rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they have voluntarily entered must stand and be enforced, although the final issue may be different from that which was anticipated."

This brings us to the case of Railway against Huyett, first reported in 89 S. W. 1118. In that case it was sought to avoid a release by statement from the company's physician, one Dr. Scott, who said: "Huyett, you are not damaged. You'll soon be as good a man as ever. You'll soon be able to do any and all kinds of work." The court said in that opinion: "It was his (Dr. Scott's) duty to give to appellee a true statement of his physical condition, from which it results that a false statement made for the purpose of facilitating a settlement, if relied on, would vitiate it," and the avoidance of the release was sustained. The case is next reported in 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669, by the Supreme Court, opinion by Mr. Justice Williams. The case was reversed upon the grounds that the only statements made were made by the physician, that they were not within the scope of his employment, were not made at the very time of the contract of settlement; and in one portion of his opinion Judge Williams uses this language: "It is also true that if it were shown that defendant or its claim agent used the physician as an instrument to *deceive* plaintiff as to his condition in order that an advantageous settlement might be made, or that the claim agent and the physician acted together in so procuring the release, the contract would be affected by the physician's representations, and it may be that, if the claim agent in effecting the settlement knew and took advantage of the state of plaintiff's mind, caused by decep-

tion practised by the doctor, the result would be the same. But such things as these must be proved, and cannot be supplied by conjecture or suspicion. If plaintiff's statement be accepted that Dr. Scott made the statements, *which all concede would have been a glaring misrepresentation of the character of plaintiff's injuries and of his condition,* the question as to why he did so would naturally arise in one's mind and might suggest suspicion as to his purposes." After the case was reversed, it was submitted in the trial court, as shown in the next report of it in 49 Tex. Civ. App. 395, 108 S. W. 502, with this instruction: "If you find from the evidence that Dr. Scott, prior to the execution of said release, represented to the plaintiff that his injury was not so great as it really was, and if the plaintiff believed said representation to be true and relied on the same, and if you further believe that the defendant's agent, Cox, knew of said representation and that the plaintiff relied on the same, and took advantage of said representation and the plaintiff's confidence therein to settle with the plaintiff for a sum less than compensation for his injuries, then the release is not binding." In passing upon the case Judge Speer quoted the language from Judge Williams' opinion to this effect: "And it may be that if the claim agent in effecting the settlement knew and took advantage of the state of plaintiff's mind caused by deception practised by the doctor," etc. Applying that language to that charge, the Court of Appeals affirmed the case, and a writ of error was denied. In that case it seems that one Dr. White, who was in partnership with Dr. Scott, came with the claim agent to see the plaintiff, and during the negotiations Cox, the claim agent, and White, the physician, interrupted same to have a secret conversation. The claim agent came back, stating to the plaintiff that he had just talked to Drs. Scott and White, and that they stated that he (plaintiff) would soon be all right, and offered plaintiff $250 in settlement.

It is very difficult to determine just how far the refusal of the writ of error in that case meant that the Supreme Court approved the charge therein given, but to our minds the distinguishing features between the case quoted and the case at bar are these: In the case quoted it seems to have been conceded that if Dr. Scott made the statement that the plaintiff was well, or practically so, it was a glaring misrepresentation of the facts and was untrue, and that the charge quoted was held to be sufficient in view of that fact, as, indeed, we think it would be, for if it be conceded that the plaintiff in that case was still a sick man, which fact was admittedly known to the physicians, then the mere fact that the physician represented to him that he was a well man would amount in law to a fraudulent representation, and it

will also be seen that the material part of the charge quoted is the expression, "represented to the plaintiff that his injury was not as great as it really was." We think this charge by its language involves an element of knowledge on Dr. Scott's part that the injury in fact was greater than he represented it to be. In a subsequent case of Railway against Polka, 124 S. W. 226, in which a writ of error was denied, the release was sought to be avoided on three grounds: One, of mental incapacity, one, of mutual mistake, and one of fraudulent representation. With reference to the fraudulent representation, the testimony shows that, when the plaintiff and the claim agent were endeavoring to settle, they agreed that the plaintiff should be paid for his time, neither of them appearing to know what time he had or would lose, and they went together to the physician. The physician there examined him and stated that he was apparently all right and in good shape; the physician testifying that in so stating he gave an honest opinion. Subsequently the plaintiff in that case died, affirmatively showing that the physician was at least mistaken in his prognosis. The trial court refused to submit the issue of fraud on this testimony, but submitted it on the issues of mental incapacity and mutual mistake. The Court of Appeals reversed and rendered the case, approving the refusal to submit the issue of fraud, and a writ of error was denied by the Supreme Court.

In view of the fact there is no testimony in this case indicating that the physicians or the claim agent knew or had reason to know that in truth Kramer was not as well a man as they represented him to be, and especially in view of the fact that he had no symptoms at that time indicating epilepsy, and that he made no contention below, and apparently makes none here, that the representations of the physicians and the action of the claim agent thereon were not all in good faith, and especially in view of the fact that the physicians testified that their representations were their honest medical opinions, we are of opinion that the court below erred in submitting the issue of the validity of the release to the jury. If there had been any evidence of fraud, bad faith, or known concealment on the part of the claim agent or the physicians, it may be that the issue would properly have been submitted, but the mere fact that the physicians, with the light which they had, expressed their medical opinions to plaintiff that he was practically well, with no showing that they knew these statements to be false, without any testimony indicating that they made them for the purpose of bringing about the release, would not, we believe, suffice to avoid a voluntary settlement entered into by the plaintiff at a time when his knowledge of his symptoms was greater than any

one else's when he might, if he had seen fit, taken the opinions of other physicians.

As it appears that the case was fully developed, and as no contention of fraud was made below, or .is made here, we think the case should be reversed and rendered for the appellant, and it is so ordered.