## CHICAGO, R. I. & P. RY. CO. v. JOHNSON.

No. 7148—Opinion Filed July 30, 1918.

Rehearing Denied Oct. 8, 1918.

(175 Pac. 494.)

(Syllabus.)

### 1. Release—Rescission—Fraud.

Where plaintiff was injured as a result of the negligence of a railway company, and in reliance upon certain representations made to her by the company physician, with reference to her condition and the extent of her injuries, executed a release in settlement of damages suffered by her, and where it is shown that such representations were not true, and said physician knew such representations to be untrue, and such representations were made with the intention and purpose of inducing plaintiff to execute such release, which she would not have done, but for such representations, and it is further shown that plaintiff suffered damage or injury by reason thereof, held, that fraud sufficient to warrant the cancellation of such release is shown.

### 2. Trial—Instructions — Construction as a Whole.

Instructions should be considered as a whole and construed together, and it is not necessary for any particular paragraph to contain all the law of the case; it being sufficient if, when taken together and considered as a whole, they fairly present the law of the case, and there is no conflict between the different paragraphs thereof.

### 3. Trial—Instructions—Assumption of Fact —Life Expectancy.

Where the American Mortality Tables are admitted in evidence, and there is no other testimony showing plaintiff's expectancy to be different from that shown by the tables, it is not error for the court to assume that plaintiff's expectancy is as shown by such tables.

Error from District Court, Beckham County; G. A. Brown, Judge.

Action by Lucy L. Johnson against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

C. O. Blake, R. J. Roberts, W. H. Moore, and K. W. Shartel, for plaintiff in error.

W. F. Mayer, for defendant in error.

HARDY, J. Lucy L. Johnson sued the Chicago, Rock Island & Pacific Railway Company for damages for alleged injuries received by her while traveling as a passenger upon one of its passenger trains. Within a short time after the injuries she signed a release and settlement, whereby, in consideration of $400, she released and discharged the defendant from all claims by reason of said injuries. Judgment was for plaintiff for $2,100, and the defendant brings the case here.

The principal question presented is whether there was sufficient evidence to submit the case to the jury on the question of fraud in procuring the release relied upon by defendant. There is no dispute that an accident occurred at Little Rock, Ark., which was caused by defendant's negligence, and which resulted in injury to plaintiff; nor is there any question presented as to plaintiff's status as a passenger or the defendant's duty towards her as such.

Upon the principal question urged, it appears from the evidence that a few minutes after the collision Dr. Reagan, the regular company physician, visited plaintiff, and was shortly followed by Dr. Harris, both of whom were called by defendant. Both physicians examined plaintiff, and were informed at the time that she was pregnant. After the examination each informed her that her injuries were slight and that she would soon recover. Dr. Harris left, and about an hour and a half later Dr. Reagan made another examination, and stated that plaintiff would suffer no serious result from her injuries; that there would be no danger of having any bad trouble; that the muscles and leaders of her neck and back were strained, and that there was no danger of a miscarriage, because, if she was going to have a miscarriage, she would be suffering with abdominal pains. Negotiations were opened for settlement by Dr. Reagan, who offered $200 in satisfaction of her injuries. Dr. Reagan, the husband of plaintiff, and Mr. Kirkpatrick, defendant's claim agent went to the smoking compartment to negotiate for a settlement. Johnson stated that he did not want to settle then, but desired to wait until the result of his wife's injury could be ascertained. The claim agent and Dr. Reagan both insisted upon and urged an immediate settlement. In this connection Dr. Reagan stated to Johnson that he regarded $200 as a fair settlement, and told Johnson:

"You can put the utmost confidence in what I tell you. I will advise you the very best I know. You need not worry about that [a miscarriage from plaintiff's injuries]. If she was going to have a miscarriage she would have been suffering with pains by this time."

Kirkpatrick offered $250, saying to Johnson that he was going to be liberal, in view of Mrs. Johnsons' injuries. Dr. Reagan seconded this offer by advising Johnson that if his (Reagan's) wife were the one injured he would consider $200 a good settlement. Dr. Reagan took part in all the negotiations looking to settlement, urging and insisting that an immediate settlement be made, and accompanied Johnson and the claim agent to plaintiff's berth, where the release was signed which occurred a very short distance from Memphis, and as soon as the instrument was signed left the train with the claim agent. Plaintiff suffered a miscarriage about 30 days later.

The evidence was sufficient to warrant the court in submitting the case to the jury, and to sustain the verdict of the jury's finding that the release was obtained by fraud. The assertion by Dr. Reagan that plaintiff was but slightly injured, and that the absence of pains after the injury indicted that there would be no miscarriage, was a false statement of a substantive fact. The physicians examined on behalf of plaintiff testified that the absence of pain was no indication upon which to base such a prognosis. Upon cross-examination Dr. Reagan himself admits that the absence of pains was not a sufficient basis for the prognosis which plaintiff claims he made, and admitted that he knew plaintiff might have a miscarriage.

The representations made by Drs. Harris and Reagan were believed by plaintiff and her husband, who relied upon them and were induced thereby to sign the release, which they would not have signed otherwise. In St. L. & S. F. R. Co. v. Richards, 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032, plaintiff was injured while traveling on one of defendant's passenger trains. On the following day, while she was in bed at the railway company's hospital, away from friends and acquaintances, and still suffering from the effects of her injuries, the extent of which she did not know, and was apparently not in a position to ascertain, the claim agent of the defendant, accompanied by the defendant's physician, visited her and sought to effect a settlement and release of the damages and liability. In order to induce her to sign such a release for a grossly inade-

quate sum, the claim agent and physician represented to her that her injuries were slight and temporary, when in fact they were serious and dangerous, which fact the physician knew, or should have known, had he exercised proper care. Believing the representation of the physician, and acting thereon, she signed the release, which she would not have done, had she been advised of her true condition. These facts were held sufficient to sustain an averment of fraud, and sufficient to sustain a verdict in plaintiff's favor.

A similar question was again presented in St. L. & S. F. R. Co. v. Reed, 37 Okla. 350, 132 Pac. 355. In that case plaintiff was en route from Madill to Idabel upon one of defendant's passenger trains, and was injured at the former place. She was carried from Madill to Hugo on the same train, where she was taken in charge by the company's claim agent, who called the company physician to see her, and who, after making an examination, informed her that she was not seriously injured. While waiting at Hugo for the train to depart for Idabel, she executed a release for damages in consideration of $10. After reaching her destination by the same train on the same date, she discovered that she was more seriously injured than she thought, or than she had been told by the company physician, and at once brought suit for damages. The company pleaded in bar the written release herein above mentioned. Plaintiff recovered, and the verdict was sustained. The statements made to her by the physician within a short time after the accident occurred were held to be of such a positive character that it amounted to a representation of a material fact, because the physician had superior knowledge of the subject-matter under discussion, and his opinion, being contrary to the facts, was such a misrepresentation as would warrant the cancellation of the release secured by reason thereof.

In Nelson v. Chicago & N. W. R. Co., 111 Minn. 193, 126 N. W. 902, 20 Ann. Cas. 748, in discussing a similar question, the Supreme Court of Minnesota said:

"It is equally well established that releases of claims for personal injuries, executed in reliance on fraudulent and false representations of probability of recovery, made to the injured person by an attending physician in the employ of the persons sought to be charged, are voidable. * * * The courts, moreover, have generally viewed releases by the physician, acting as assistant claim agent, with extreme suspicion, and in many cases in which the physician has acted in the dual capacity of claim agent and doctor, or in which he has violated the proprieties of the situation and has expressed his opinion with reference to or in connection with a settlement then pending, the courts have avoided releases on the ground of mutual mistake, where subsequent experience has shown the physician was in fact wrong. * * * Lumley v. Railway Co., 76 Fed. 66, 22 C. C. A. 60; Railway Co. v. Fowler, 136 Fed. 119, 69 C. C. A. 106; Railway Co. v. Huyett, 49 Tex. Civ. App. 395, 108 S. W. 502; Viallet v. Railway Co., 30 Utah, 260, 84 Pac. 496, 5 L. R. A. (N. S.) 663."

The jury found that Dr. Reagan made the representations as claimed by plaintiff, and, while denying that he made them, Dr. Reagan admits that such statements were not warranted, and that he knew at the time of making the examination that the absence of abdominal pains would not justify a prognosis that there was no danger of a miscarriage. It was his duty to express an honest opinion, according to his best learning and experience, as to the nature and extent of plaintiff's injuries, the probable consequences resulting therefrom, and the probable duration of time necessary for a complete recovery; and when he failed to make such disclosure to plaintiff, and followed up his deception by throwing the weight of his professional influence upon the side of the company in the negotiations for a settlement, and because of the invited confidence reposed in him by plaintiff and her husband induced her to execute the release, the jury was well warranted in finding the release was obtained by fraud. Lumley v. Railway Co., supra; Haigh v. White Way Laundry Co., 164 Iowa, 143, 145 N. W. 473, 50 L. R. A. (N. S.) 1091; Viallet v. Consolidated Ry. & Power Co., 30 Utah 260, 84 Pac. 496, 50 L. R. A. (N. S.) 663; Gulf C. & S. F. Ry. Co. v. Huyett, 49 Tex. Civ. App. 395, 108 S. W. 502; Jones v. Santa Fe Ry. Co., 32 Tex. Civ. App. 198, 73 S. W. 1082.

It was no part of the professional duties of Dr. Reagan to express any opinion as to the adequacy of the proposition offered by the company in compromise and settlement of the damages suffered by plaintiff. When he went outside of his professional duties, and by means of false and fraudulent statements misled plaintiff and her husband, in order to induce a settlement favorable to the company, his conduct was reprehensible and deserving of condemnation. Upon examination of the cases relied upon by defendant, it will be found that the facts there are vitally different from the circumstances in the present case.

Error is urged in the giving of instruction No. 7, for the reason that the court omitted to embrace therein, as an element of fraud, knowingly or recklessly making an untrue statement, and allowed the jury to find for plaintiff on the question of avoiding the release, if they found the statements of deendant's physician were untrue. This contention cannot be sustained. The court correctly defined fraud in paragraph No. 3, and in paragraph 6 instructed the jury that, if they found there were no material representations made by defendant's physician or claim agent, or that the material representations so made by them were not false, or that they did not know the representations made by them were untrue, and did not make them as a positive assertion without knowledge that they were true, they should return a verdict for the defendant. Paragraph No. 7 is connected directly with paragraph 6 by the use of the conjunction "but" clearly calling the attention of the jury to the principle of law which was embraced within paragraph 6, and the jury could not have read paragraph 7 without knowing that it was given in connection with paragraph 6 and should be so considered.

The case of Oklahoma Railway Co. v. Milam, 45 Okla. 742, 147 Pac. 314, and cases following it, are cited in support of this contention. The Milam Case, and others based thereon, have been disapproved in so far as they support the doctrine relied upon, and it is now the holding of the court that the instructions should be considered as a whole and construed together, and that it is not necessary for any particular paragraph thereof to contain all the law of the case; it being sufficient if, when taken together and considered as a whole, they fairly present the law of the case, and there is no conflict between the different paragraphs thereof. Ponca City Ice Co. v. Robertson, 67 Okla. 86, 169 Pac. 1111; Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 Pac. 1166; Newton v. Allen, 67 Okla. 73 168 Pac. 1009. Considering the instructions together and construing them as a whole, the elements of fraud which defendant insists should have been contained in paragraph 7 were submitted to the jury, who could not have possibly been misled in this particular, and within the rule just cited the instructions must be held sufficient.

The remaining proposition urged is that the trial court erred in giving paragraph No. 11, because in that paragraph the court stated the term of plaintiff's life expectancy to be 38.81 years. The American Mortality Tables properly were admitted in evidence, and from these tables it appears that her expectancy was as stated by the court. It is urged, however, that the tables do not cover the expectancy of women, or that plaintiff came within any of the classes covered by the table, and that it was error for the court to assume plaintiff's expectancy to be as stated, but that this should have been left to the jury, to determine from all the evidence in the case, and that the tables were not conclusive.

When there is any other evidence from which the jury might find the expectancy of life to be different from that shown by the tables in evidence, the tables are not themselves conclusive. San Bois Coal Co. v. Resetz, 43 Okla. 384, 143 Pac. 46. Such tables are, however, controlling in the absence of evidence tending to show that the expectancy of the plaintiff was greater or less than that shown by the tables, and where there is no testimony contradicting the tables as to plaintiff's probability of life, and in the absence of a request from counsel that the jury be instructed that such tables were not conclusive evidence thereof, reversible error is not shown. Little v. Bousfield & Co., 165 Mich. 654, 131 N. W. 63; Belmer v. Boyne City Tanning Co., 160 Mich. 669, 125 N. W. 726; Bettis v. C., R. I. & P. Ry. Co., 131 Iowa. 46, 108 N. W. 103; Fink et al. v. Ash, 99 Ga. 106, 24 S. E. 976. And it is proper that such tables be admitted in evidence, without reference to sex, to show the expectancy of a woman. Croft v. C., R. I. & P. Ry. Co., 134 Iowa, 411, 109 N. W. 723; Missouri R. Co. v. Hines, 40 S. W. 152; Valente et al. v. Sierra Ry. Co. of California, 151 Cal. 534, 91 Pac. 481.

Upon the examination of the entire record, it appears that substantial justice has been done, and the judgment is affirmed.

All the Justices concur.