**ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. THOMAS.**　(No. 2619.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 10, 1922. Rehearing Denied Nov. 16, 1922.)

1. Release ☞13(1)—$1 held sufficient consideration for release of claim for personal injuries.

One dollar paid to plaintiff by defendant's agent for a release of a claim for personal injuries was sufficient consideration to support it, and plaintiff was not entitled to have it set aside on the ground alone that it was without a consideration.

2. Release ☞17(2)—Injured employé entitled to have release set aside upon showing that statements to induce it were false, though in good faith.

If negotiations resulting in a settlement of a claim for personal injuries to an employé were made between employer's doctor and the employé and statements regarding the nature of the injuries were made by the doctor to induce the employé to make the settlement, employé is entitled to have the release set aside upon showing that the statements were false, that he believed them to be true and that he was induced by such belief to make the settlement, though the doctor did not make the statements at the time of the execution of the release, and believed them to be true when he made them.

3. Release ☞17(2)—Injured employé entitled to have release set aside upon showing that statements of physician were false.

Where employer's claim agent knew at the time of negotiating a settlement with plaintiff employé for personal injuries that employer's physician had made a statement to plaintiff that his injuries were not serious, that he had received a mere superficial wound, and the claim agent assured plaintiff that the statement was a true one, and knew that plaintiff believed it to be true, and knew that such belief was the inducement to plaintiff to make the settlement, plaintiff was entitled to have the release set aside upon showing that the physician's statement was false.

4. Release ☞57(2)—Facts held to show that employer's agent settled with injured employé for less than a fair compensation.

In an employé's action for personal injuries, evidence held to support finding that defendant employer's claim agent took advantage of a statement by defendant's physician regarding the severity of the injuries and of plaintiff employé's reliance on the statement, and settled with him for a sum less than the fair compensation for his injury.

Appeal from District Court, Smith County; J. R. Warren, Judge.

Action by R. C. Thomas against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

The suit was by appellee against appellant for damages arising from injury to his person suffered by him while discharging duty he owed appellant as its employé. The appeal is from a judgment in his favor for $2,000.

It appeared from testimony heard at the trial that appellee was struck on his right cheek by the handle of a jack he was undertaking to operate in connection with work he and other employés of appellant were doing in repairing a bridge, and that at the instance of his foreman, one Haley, he went to see Dr. Daniels, who was appellant's local surgeon at Gilmer. After testifying that the

doctor examined his jaw, appellee further testified as follow:

"I asked him had I lost my teeth, and he said 'No,' and I asked: 'Doctor, isn't my jaw broke?' He said: 'No, your jaw isn't broke at all. It is just a slight bruise, that's all that's wrong with you.' He said: 'You go by the drug store and get a package of Epsom salts, and take it down to the boarding car with you and make a solution of this salts and bathe your face with it, and you won't know you have been hurt in three or four days. It is just bruised; that's all.' I went to the drug store and purchased the salts and went to the boarding cars. In going to the boarding cars I met Mr. Haley. He asked me how I was feeling. I told him: 'Pretty good.' He said: 'What did the doctor say?' I said: 'He told me my jaw wasn't broke, I would be all right in three or four days.'"

Appellee said he used the salts as directed by the doctor, and further testified:

"The next morning before I got out of bed, about 6 o'clock, Mr. Haley, the bridge gang foreman, sent to me, to my bunk where I slept, where we all slept. The best I can remember it was a man by the name of Cicero. He came in the car and said: 'Thomas, Mr. Haley said for you to come up to his car; he wants to see you.' I told him: 'All right, as soon as I could get on my clothes.' That was about 6 o'clock in the morning, and I put on my clothes just as soon as I could, and went right ahead and went up to his car, and when I walked in the car Mr. Haley said: 'This is the claim agent. He has come to get you to sign a release or get a release from you.' He was speaking of another man who was there at the time. I asked him, 'What about the release?' and he said, 'Well, it is a form, an instrument of writing that the railroad company takes from men when they get hurt and go to a doctor.' I spoke up and said, 'Well, the doctor says I am not hurt, my jaw isn't broke,' and he said, 'No; the doctor is right; he told you right about it; your jaw isn't broke; if it was, you couldn't use your jaw at all.' This other man who was sitting there was named Graves, I suppose. I don't know whether he was the claim agent or not. I have learned since that he was not. I have been told that he was the station agent at Gilmer. I suppose he was holding that position at the time he was there. * * * It was about 6 o'clock in the morning when Mr. Graves was down there at the car. Mr. Graves, or this agent, this claim agent, supposed to be, said, 'Let's see where you was hit,' and I turned and showed him my face. He just put his hand up there and said, 'Why, the doctor is right; that jaw isn't broke; if it was broke, fellow, you couldn't have any use of your jaw at all.' I said, 'All right; I will sign the release;' and I did sign it, and after I signed the release this supposed agent told me, he said, 'Haley, you pay Thomas a dollar; this is what we call a dollar settlement, and I will have the check made payable to you, and Thomas will have his money, and I can just send you the check;' he said 'That's the way I make settlements with them;' he said, 'That's the best; I find it the best;' and they gave me a dollar. The reason why I signed that release

was because the doctor told me I wasn't hurt, and Mr. Haley and this other man told me that I wasn't hurt, and repeated that the doctor was correct in what he told me, and I believed it."

The release in question was as follows:

"Cotton Belt Route          P I 771
         "Employé's Release.

"Whereas, R. C. Thomas was on the 20 day of July, 1921, an employé of the St. L. S. W. Ry. of Texas, and as such employé was engaged as B. & B. laborer; and whereas, I, the said R. C. Thomas, received certain injuries in mode and manner as follows, viz: By being struck on right side of head by Jack Lever while operating the jack, on the aforesaid date; and whereas, the said railway company deny any and all negligence on their part, their officers, agents, and employés, and deny any and all liability for damages for the injuries so far as aforesaid by me received: Now, therefore, for the purpose of fully ending and determining the question of liability on the part of said railway company, for damages for the aforesaid injuries, and for the purpose of avoiding litigation, I, the said R. C. Thomas, in consideration of the premises, and of the sum of $1.00, one & No/100 dollars, to me in hand paid by the said railway company, the receipt whereof I do hereby acknowledge, do hereby relinquish all claims which I may have against the said company for damages for the aforesaid injuries, and do hereby release the said company of and from all claims for damages as aforesaid, and from all claims and demands growing out of and caused by said injuries now and hereafter, and acknowledge full satisfaction and settlement of all claims and demands. The above amount is the sole consideration for which this release is signed. I have read and understand the above.

"Witness my hand and seal this 21st day of July, 1921.
         "[Signed]  R. C. Thomas [Seal.]
"Attest: W. F. Haley."

On special issues submitted to them with reference to the release the jury found: (1) That Dr. Daniels, appellant's local surgeon at Gilmer, prior to the execution of the release by appellee, represented to him "that his injury was not serious, and was merely a superficial wound, and that the bone of his jaw was not broken"; (2) that the representation was not "substantially true"; (3) that appellee executed the release "in reliance upon such statements," believing them to be true; (4) that he would not have executed the release had he known "that such representations were untrue in substantial particulars"; (5) that Haley or Graves, "before and at the time of the execution of the release" knew of the representations made by Dr. Daniels to appellee; (6) that Haley or Graves knew that appellees relied on such representations and believed them to be true when he executed the release; (7) that Haley or Graves at the time appellee executed the release took advantage of such representations and of appellee's reliance on same, and settled with him "for a sum less than fair compensations for his injury."

Marsh & McIlwaine and Bryan, Marsh, all of Tyler, and E. B. Perkins, of Dallas, for appellant.

Johnson, Edwards & Hughes, of Tyler, for appellee.

WILLSON, C. J. (after stating the facts as above). No question is made in this court about the right of appellee to recover as he did in the court below if he was not bound by the release set out in the statement above. The contention here is that the testimony did not warrant a finding that he was not so bound, and that the trial court therefore erred when he refused appellant's request that he instruct the jury to return a verdict in its favor. We think the contention should be overruled.

[1] It may be conceded that the consideration (one dollar) to appellee for the release was sufficient to support it, and that appellee therefore was not entitled to have it set aside on the ground alone that it was without a consideration the law recognized. Leath v. Refining Co. (Tex. Civ. App.) 223 S. W. 1022; Johnson v. Russell (Tex. Civ. App.) 220 S. W. 352; McKay v. Tally (Tex. Civ. App.) 220 S. W. 167. It may also be conceded that it conclusively appeared, as appellant insists it did, (1) that Dr. Daniels believed the statement he made to appellee to be true, (2) that it was made on another occasion than the one when Haley and Graves negotiated the settlement with appellee, and (3) that it was not made to induce appellee to make the settlement and execute the release. But it does not follow that the trial court therefore erred as charged; for the statement of Doctor Daniels that appellee's "jaw was not broken" was as to an existing fact (Alenkowsky v. Ry. Co. [Tex. Civ. App.] 188 S. W. 956; R. Co. v. Haven [Tex. Civ. App.] 200 S. W. 1152,) and there was testimony to support findings made by the jury (1) that the statement was not true, (2) that appellee believed it to be true and was induced by that belief to execute the release, and (3) that Haley or Graves at the time they negotiated the settlement knew that Dr. Daniels had made the statement to appellee, knew that appellee believed it to be true, and knew that the inducement to appellee to make the settlement and execute the release was his belief that the statement was true.

[2] There is no doubt if the negotiations resulting in the settlement had been between Dr. Daniels·and appellee and the statement in question had been made by Dr. Daniels to induce appellee to act as he did, the latter would have been entitled to the relief he obtained on showing that the statement was false, that he believed it to be true,.and that he was induced by such belief to make the settlement. Such a right in appellee would not have been affected by the fact that the statement, if made in the negotiations was not made on the particular occasion when appellee executed the release, nor by the fact that Dr. Daniels believed it to be true when he made it. R. Co. v. Brown (Tex. Civ. App.) 69 S. W. 651; Ry. Co. v. Reno (Tex. Civ. App.) 146 ·S. W. 207; Ry. Co. v. Neill (Tex. Civ. App.) 159 S. W. 1180; Ry. Co. v. Maples (Tex. Civ. App.) 162 S. W. 426.

[3, 4] We see no reason why the rule applicable to facts like those suggested should not be applied here. Haley and Graves knew at the time they negotiated the settlement that Dr. Daniels had made the statement; they assured appellee that the statement was a true one; they knew appellee believed it to be true; and they knew that such belief was the inducement to him to agree to the settlement. Ry. Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N.S.) 669; Id., 49 Tex. Civ. App. 395, 108 S. W. 502; Alenkowsky v. R. Co. (Tex. Civ. App.) 188 S. W. 956; Boles v. Aldridge, 107 Tex. 209, 175 S. W. 1052. We think the jury had a right to conclude from those facts, as they did, that Haley and Graves took advantage of Dr. Daniels' statement and of appellee's reliance on same and settled with appellee "for a sum less than fair compensation for his injury." In the Huyett Case the court (49 Tex. Civ. App. 395, 108 S. W. 502) approved an instruction to the jury as follows:

"If you find from the evidence that Dr. Scott, prior to the execution of said release, represented to the plaintiff that his injury was not so great as it really was, and if plaintiff believed said representations to be true and relied on the same, and if you further believe that the defendant's agent, Cox, knew of said representations, and that the plaintiff relied on the same, and took advantage of said representations, and the plaintiff's confidence therein to settle with the plaintiff for the sum less than compensation for his injury, then the release is not binding on the plaintiff."

The judgment is affirmed.