## WOOD v. TRADERS' & GENERAL INS. CO.
### No. 13111.

Court of Civil Appeals of Texas.
Fort Worth.
March 8, 1935.

Rehearing Denied April 12, 1935.

Clark & Clark, of Fort Worth, for appellant.

Lightfoot & Robertson and Nelson L. Scurlock, all of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

Arthur Trowell Wood sought recovery of compensation under provisions of the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.), for injuries sustained by him while working as an employee of the J. Ernest Loyd Sand & Gravel Company, who was a subscriber under that law and who carried a policy of insurance with the Traders' & General Insurance Company, the defendant in the case, and plaintiff has appealed from the judgment denying him any relief.

According to allegations in his petition and evidence introduced by him on the trial, while plaintiff was employed as a workman in the construction of an underpass on a highway, he was struck in the chest by a beam some 3x10 feet in dimensions, as a result of which he has suffered pain and impairment of ability to work. According to his further allegations, within thirty days after the date of his injury he filed with the Industrial Accident Board his claim for compensation for his injury, and, before the same was heard on its merits, there was a compromise settlement of his claim with the defendant insurance company for the sum of $35, which was duly approved by the Board, acting under authority conferred upon it by section 12, article 8307, Rev. Civ. Statutes. He alleges that he was induced to make that settlement by representations made to him by Dr. Henry Trigg, the agent of defendant who examined him, that plaintiff's injuries were not serious and that he would fully recover therefrom within a few days, which said representations were false, and upon discovery of such falsity he applied to the Board to set aside the compromise agreement and its order approving the same and in lieu thereof award him compensation as first claimed, which application was refused, and from such refusal he appealed to the district court, where the case was tried.

In addition to a general demurrer and special exceptions to plaintiff's petition, defendant filed a general denial, and specially invoked the compromise settlement alleged in plaintiff's petition and full payment of the $35 agreed to by plaintiff, together with the approval of the same by the Board as a complete bar to plaintiff's suit.

At the conclusion of the testimony, the trial court granted defendant's motion for an instructed verdict in its favor, manifestly upon the theory that the compromise settlement was a bar to the suit in the district court. And that ruling is challenged here upon the contention that the evidence introduced made a prima facie showing of right

in plaintiff to set aside and cancel the compromise settlement of the claim under his allegation that he was induced to enter into it by the alleged misrepresentations of Dr. Trigg, defendant's servant, alleged in plaintiff's pleadings, and referred to above.

Plaintiff testified that his injury occurred on Saturday, April 29, 1933. He continued to work the rest of that day. The next morning, which was Sunday, he went to the City County Hospital, where Dr. Cochran examined his chest, which was then pretty well inflamed; ordered an X-ray picture taken of it, which was taken by Dr. Crawford, another doctor in the same institution; bound it with adhesive tape; and told him that he had a broken chest bone. Monday morning following, his chest was paining him and he could not sleep well on account of the pain and shortness of breath. Eight days after his return from the hospital he made a second visit there, where more adhesive plaster was applied to take the place of the first used, but which had slipped off.

Plaintiff testified as follows:

"About May 8th, I went up to see the lawyer about the case. I didn't know what his name was to start with, but, after I found out later, his name was Mr. Craik. I don't know whether he offices with Mr. Houtchens here, but I know Mr. Houtchens' office is there close to his office, in the same group of offices in the same building. You asked if I consulted Mr. Craik about the matter. I don't know just what you would call it; I asked him what I ought to do about it, is all I asked him. I didn't employ him to file a claim for me before the Industrial Accident Board, because I didn't have anything to employ him with, but I did this, I asked him if he would see into it for me and see if I could get my workman's compensation. I didn't have any money to pay him with, Mister. The only way that I could see that he got any pay was when I got that $35.00 he taken some of that, so, I reckon then is when he was paid, with this money that I got from the insurance company. I knew, all right, that he was not representing the insurance company.

"Q. The fact of the business is he was acting for you in the matter, wasn't he? A. Well, I figured he was.

"Q. And that was about May 8th that he made out a claim for compensation? I will show you a copy of it (exhibiting copy to the witness). A. Yes, sir, I wrote this all right. I know my writing. I remember writing that."

A copy of the claim referred to was introduced in evidence. It bore date May 8, 1933, and same, together with notice of injury, was filed with the Industrial Accident Board on May 9, 1933, both signed by plaintiff and witnessed by Mr. J. H. Craik, his attorney.

Two or three weeks after his injury, which was one or two weeks after his claim was filed, he went to see Dr. Trigg, an employee of defendant. Dr. Trigg felt of plaintiff's chest and told him that: "I would be all right in a few days, that it wouldn't amount to anything." He said he relied upon what Dr. Trigg told him and was induced thereby to settle his claim for $35 paid to him by defendant upon his compromise agreement, hereafter referred to. He further testified that Dr. Niess, the city-county doctor, had waited on him ever since he got hurt. "He never asked me nothing about my injury; of course he asked me how I got hurt, and I told him I got hit in the chest, and he waited on me and give me something. He never did say if it was a pretty bad injury. * * * I remember I went to Dr. Niess one time before I made the settlement with them, and then about two weeks after he come down to the house and seen me one night, when my wife called him to come."

Dr. Crawford, the physician in the City-County Hospital working with Dr. Cochran and who took the X-ray picture of plaintiff's chest in the early part of May, and which picture was introduced in evidence, testified that in his opinion there was a slight slipping of a cartilage in the chest but no fracture, and that his opinion was verified by the X-ray picture, and witness could see no reason why the injury would not heal within four to six weeks. Dr. Cochran's prognosis was to the same effect.

Plaintiff further testified that after his injury he had worked from time to time, but not as effectively as before the injury.

The agreement of compromise was presented to the Industrial Accident Board by Mr. Craik, plaintiff's counsel, and was there approved. About a month after plaintiff had received the $35, agreed to as a compromise settlement, he undertook to get further compensation, claiming that his injury had proved more serious than he believed it was at the time of settlement, and thereupon filed his application with the Board to set aside the compromise settlement noted above. The compromise settlement agree-

ment was dated June 12, 1933, and includes the following stipulations:

"Whereas, the facts and circumstances connected with and surrounding the infliction of said injury, make the liability of the Traders and General Insurance Company uncertain and indefinite, or incapable of being satisfactorily established. * * *

"The claimant further contends that he is not able to perform his usual duties in as satisfactory a manner as prior to his injury, and will always be hindered to a great extent in the performance of any nature of manual labor, and while at this time the extent and duration of his injury and disability is unknown, there is a possibility of this injury resulting in permanent total disability. * * *

"In view of the questionable character of this employee's claim, both from the standpoint of liability and the nature and extent of injury, the parties hereto, in order to avoid the costs of litigation, have entered into this arbitrary compromise settlement, whereby the claimant understands and agrees that by his acceptance of the amount hereinafter mentioned, the Insurance Company will be fully and finally discharged and released from any and all claims on account of this employee's alleged injury, and any medical expense not authorized by the Insurance Company, whether such claim be for total temporary disability or time lost, permanent partial disability as applied to the body or any of its members, total permanent or disfigurement.

"Claimant admits in making this settlement that he is not relying upon any statements, promises or representations made by any doctor or agent of the Insurance Company, but is making this settlement of his own free will, without outside influence. * * *

"And whereas, there is hereto attached in support of the doubtful liability or extent of the injury affidavits of the following persons: * * *

"It is therefore mutually agreed by the undersigned that the provisions of section 12, part 2, of the Employers' Liability Act (article 8307), which relates to compromise settlements, has appropriate application to this claim for compensation under the Employers' Liability Act, and the same is hereby applied by the undersigned agreeing to compromise and settle said claim for the sum of $35.00 in addition to amount heretofore paid.

"It is further mutually agreed that this compromise is made subject to the approval of the Industrial Accident Board, and that when said approval has been given and the said sum of $35.00 has been paid by said Traders & General Insurance Company, that the same will have been fully consummated and the compensation under the Employers' Liability Act will have been fully and finally compromised, settled and satisfied."

And attached to that agreement was the following certificate of Dr. Crawford, who treated him at the city-county hospital: "This is to certify that I attended A. T. Wood who was apparently injured on April 29, 1933, while in the employ of J. Ernest Loyd Sand & Gravel Company. X-ray revealed fractured sternum (breast bone). In my opinion his disability from this injury would be about four to six weeks."

There was introduced in evidence a receipt by the claimant acknowledging payment of $35 as follows: "In full compromise settlement, accord and satisfaction of all compensation and claims for compensation which I have or could have against it by reason of injuries received by me on or about the 29th day of April, 1933, while in the employ of J. Ernest Loyd Sand & Gravel Co. of Fort Worth, Texas, and being the identical amount agreed upon between the Traders & General Insurance Company and me in compromise settlement agreement heretofore entered into between us on or about the 12th day of June, 1933."

Mr. Craik testified that when he filed the claim with the Accident Board he knew nothing of any prior advice given plaintiff by Dr. Trigg, and that he left the matter of compromise wholly with plaintiff and gave him no advice as to whether he would or would not compromise his claim, and did not represent him in his application to set aside the compromise settlement in that proceeding, and ever since he has been represented by other counsel.

Plaintiff's petition contains no claim that Dr. Trigg's alleged misrepresentations to him with respect to his injury were made with fraudulent intent to deceive him, or that the compromise settlement was the result of mutual mistake of himself and defendant's representatives. Furthermore, the testimony introduced shows conclusively that the alleged misrepresentations of Dr. Trigg, if any, occurred long before the compromise settlement agreement was entered into, and the settlement was made by a rep-

resentative of defendant other than Dr. Trigg and without any knowledge or notice of the former misrepresentations of Dr. Trigg, if in fact he made such.

██ While this suit involves the provisions of the Workmen's Compensation Law, the rules applicable to rescission and cancellation of contracts, under the common law, are equally applicable here, and we have reached the conclusion that plaintiff failed to make out a prima facie case for the relief prayed for and that the trial court did not err in instructing a verdict for the defendant. Gulf, C. & S. F. Ry. Co. v. Huyett, 99 Tex. 630, 92 S. W. 454, 5 L. R. A. (N. S.) 669; Quebe v. G., C. & S. F. Ry. Co., 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545; Goodwin v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 73 S. W.(2d) 660; El Paso & S. W. Co. v. Kramer (Tex. Civ. App.) 141 S. W. 122.

If plaintiff be allowed to set aside his agreement and the full settlement made of his claim under the facts of this case, then it seems to us that few, at least, would be willing to take the risk of settling controversies of like character by compromises, although the policy of the law favors such a course.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

It is insisted by appellant that his petition did embody allegations to the effect that Dr. Trigg knew his statement with respect to plaintiff's injury was untrue and that same was made for the purpose of inducing plaintiff to settle his claim for a very small sum, and that plaintiff was induced thereby to settle his claim for $35; and also a further allegation to the effect that the settlement was made upon the mistaken belief of himself and defendant's "agents, servants and employees" that the injury "was of a minor nature and temporary."

However, even if plaintiff's pleadings were sufficient to present the issues of fraud and mutual mistake, we adhere to the conclusions reached upon original hearing that the judgment should be affirmed, upon the facts therein recited.

The motion for rehearing is overruled.