**LEATH et ux. v. HUMBLE OIL & REFINING CO.** (No. 9315.)

(Court of Civil Appeals of Texas. Ft. Worth. April 24, 1920.)

1. **Mines and minerals** ⬥73—**Agreement to begin well on property in vicinity, part of the consideration.**

Where an oil and gas lease recited that it was given in consideration of $1 and the lessee's agreement to start a well within three-fourths of a mile of the tract, the provision for starting the well, the territory being undeveloped and known as wildcat, is part of the consideration for the lease.

2. **Mines and minerals** ⬥58—**Consideration of $1 sufficient to support oil lease.**

In the absence of undue influence, or fraud inducing execution of oil and gas lease on royalty, the cash consideration of $1 will not be treated as a nominal consideration only, but is sufficient to support an option given the lessee to continue the lease by construction of a well or payment of annual rentals.

Appeal from District Court, Clay County; Wm. N. Bonner, Judge.

Action by O. B. Leath and wife against the Humble Oil & Refining Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Taylor, Allen & Taylor and Wantland & Dickey, all of Henrietta, for appellants. Kay, Akin & Weldon, of Wichita Falls, and R. M. Rowland, of Ft. Worth, for appellee.

DUNKLIN, J. O. B. Leath and wife, Byr Leath, instituted this suit against the Humble Oil & Refining Company to cancel an oil and gas lease executed by plaintiffs to the defendant company on September 2, 1918, upon 90 acres of land situated in Clay county, and from a judgment in favor of the defendant, the plaintiffs have appealed.

The lease in controversy contained the following provisions:

"Know all men by these presents that I, O. B. Leath and wife, Mrs. Byr Leath of the post office of Charlie, state of Texas, hereinafter called lessor (whether one or more), for and in consideration of one dollar and a well to start operation within ¾ of a mile of this tract in 60 days from date, dollars, cash in hand paid by Humble Oil & Refining Company, do hereby lease unto said Humble Oil & Refining Company, hereinafter called lessee, the following described land, situated in the county of Clay and state of Texas, as follows: * * *

"If operations for the drilling of an oil or gas well are not begun on said land on or before the 2d day of March, 1919, this lease shall then terminate as to both parties, unless the lessee on or before said date shall pay or tender to the lessor, or to the credit of the lessor, in the First National Bank at Wichita Falls, Texas, which shall continue as the depository regardless of changes or divisions in the ownership of the land, the sum of $45.00. Such payment or tender may be made in the .check or draft of the lessee, and however made shall operate to extend said time limit and keep this lease in force for six months from said date without any drilling operations. Thereafter, in like manner and upon like payments or tenders of the same amount by the lessee and without any drilling operations, said time limit may be further extended and this lease kept in force for like periods of time successively six months in each instance, but in the absence of drilling operations this lease cannot be kept in force by such payment or tenders for a total period longer than five years from the date of the first extension. And if by partial assignment hereof or otherwise this lease shall become the subject of plural ownership in severalty then and in that event proportionate payments or tenders corresponding to any such ownership may be so made and extensions

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

thereby obtained to the extent of the acreage covered by the payment or tender. Both drilling operations and payment or tenders are not required, and the lessee may alternate between drilling operations and payments or tenders during the above-mentioned period and prior to the discovery of oil or gas in paying quantities, having 20 days after any election of the lessee to discontinue or suspend drilling operations in which to make payments or tenders covering the then current six months or the unexpired portion thereof, and the right to resume drilling operations when periods of discontinuance or suspension have expired; and drilling operations anywhere on said leased land shall be effective as to the whole. But no payment or tender shall be necessary when a discontinuance or suspension of drilling operations is only temporary and is due to accident or some cause beyond the control of the lessee, or is not at the voluntary election of the lessee.

"It is understood and expressly agreed that the first consideration recited in this lease, the down cash payment, receipt of which is hereby acknowledged, by the lessor, and the obligation of the lessee expressed in the next ensuing paragraph hereof, shall be held to support and sustain, not only the privileges granted to the date first written in the last preceding paragraph hereof, the date fixed for the first extension, but also the lessee's option of extending the time limit and keeping this lease in force as aforesaid, as well as any and all other rights and privileges conferred on the lessee by this instrument. But save as stated in said next ensuing paragraph hereof the lessee shall not be obligated against the wish or option of the lessee to drill or otherwise carry on any operation hereunder.

"If during the period or any extension of this lease and prior to the discovery of oil or gas on said land there shall be drilled on adjacent land, and within 200 feet of any line of the leased land, a well producing daily for 30 consecutive days as much as 50 barrels of oil acceptable in quality to pipe line companies, the lessee will, with reasonable diligence, begin and prosecute the drilling of a well on the leased land in a faithful effort to reach the stratum and produce oil on the leased land."

The trial was before the court without a jury, and the findings of fact and conclusions of law by the trial judge appear in the record and are as follows:

"Findings of Fact.

"(1) I find that the plaintiffs executed a lease introduced in evidence and acknowledged the same in due form, for a consideration stated therein, to wit, $1, cash in hand paid, and the drilling of a well within three-fourths of a mile of the leased premises, to begin within six months, the latter clause with reference to drilling a well being interlined in the printed lease form.

"(2) I find that said well was commenced within the time stated therein and within the distance of the leased premises stated therein, and the drilling of the same has been prosecuted with due diligence, and at the time of the trial said well had been drilled to a depth of approximately 190 feet.

"(3) I find that the leased premises and the surrounding territory for several miles are situated in what is called 'wildcat' territory, there being no producing oil well in that section and that the obligation on the part of the defendant to drill a test well within that short distance of the plaintiffs' premises was of value to the plaintiffs and other contiguous landowners in securing a test well in that community.

"(4) After the expiration of one year from the date of this lease, no well having been commenced upon plaintiffs' premises, involved herein, I find that the defendant deposited in the bank named in said lease the rental money provided for therein to the credit of the plaintiff, but that the plaintiffs, upon learning of that fact from the bank, declined to accept the same, and had said rental money returned to this defendant, and thereupon proceeded to file suit for the cancellation of the lease.

"Conclusions of Law.

"I conclude as a matter of law that all of the provisions of the lease must be considered together in order to determine its effect and the intention of the parties making it, and when this is done I conclude that the pen and ink interlineation, appearing in the lease after the printed recitation, $1 consideration, forms as much a part of the consideration for the privileges on the part of the defendant to extend the lease after failure to develop the same at the end of one year as for the option of holding the same for the first year.

"I, therefore, conclude as a matter of law that the consideration appearing in the lease, in the light of the facts of the case, the defendant having done all that it obligated itself to do, and being now actually engaged in drilling a community test well, affords a valid legal consideration for the execution of the lease by the plaintiffs, and all the parties are bound thereby."

It is clear that the statement contained in the first finding of fact that the drilling of a well was to be begun within "six months" was a clerical error, and intended to mean "sixty days," as the lease itself plainly shows. It is also clear that the depth of "190 feet," stated in the second finding of fact as the depth to which the well had been drilled at the time of the trial, was also a clerical error, and was intended to be "1,900 feet," since the proof conclusively shows that such was its depth.

The appellant has presented only two assignments of error, which are as follows:

"(1) The court erred in rendering judgment for the defendants in the above-styled cause, because the undisputed evidence shows that the option to continue the lease after the first year was based upon a recited consideration of $1 and the same is a nominal consideration and not sufficient in law to support such a contract.

"(2) The court erred in construing the lease or option contract and holding that the provision to drill a well within a certain radius of the plaintiff's land within a certain time was a part of the consideration for the right to extend the time of the commencement of a

well on the plaintiff's land from year to year by paying rental, because the contract itself plainly and expressly states that the consideration for this option is the cash down payment, which was recited in the lease to be $1."

[1] The only evidence cited in appellants' brief to support the first assignment is the lease itself, so the only question presented by both assignments is the question of the proper legal construction of the written instrument. In the absence of any plea or proof that the stipulation for the beginning of a well within three-fourths of a mile of the land in controversy, within 60 days from the date of the lease, which was recited as one of the considerations for the lease, was inserted through fraud, accident, or mistake, we are unable to perceive how it can be said that said stipulation was not a part of the consideration of the lease, especially in view of the fact, as found by the trial judge, that a well was begun by defendant within the period of time stated, and was prosecuted with due diligence until it reached a depth as shown by the undisputed evidence to be about 1,900 feet at the time of the trial.

[2] In the absence of pleading and proof of undue influence or fraud practiced upon plaintiff which induced the execution of the lease, we cannot say as a conclusion of law that the cash consideration of $1, paid to plaintiff at the time of the execution of the lease, was a nominal consideration only, and insufficient of itself to support the option given to defendant to continue the lease in controversy in force by complying with its conditions and terms. The converse of that proposition seems to be well settled. Quebe v. G., C. & S. F. Ry. Co., 98 Tex. 6, 81 S. W. 20, 66 L. R. A, 734, 4 Ann. Cas. 545; Ende v. Johnson, 214 S. W. 575, and the following cases decided by this court, and not yet [officially] published: Hitson v. Gilman, 220 S. W. 140; Hunter v. Gulf Production Co., 220 S. W. 163; Johnson v. Russell, 220 S. W. 352.

For the reasons noted, all assignments of error are overruled, and the judgment is affirmed.